# EXHIBIT A

TO DECLARATION OF VICTORIA DUTSCHMANN

# BOOGIE OOGIE OOGIE

CERTIFICATE OF COPYRIGHT REGISTRATION

FORM PA
UNITED STATES COPYRIGHT OFFICE

0 0 1 7 1 7 3 4 0 0 0

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

Barbara Ringer
Register of Copyrights
United States of America

REGISTRATION NUMBER
PA 5-715
PA PAU

EFFECTIVE DATE OF REGISTRATION
May 2, 1978
Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**1 Title**

TITLE OF THIS WORK: BOOGIE OOGIE OOGIE

NATURE OF THIS WORK: (See instructions) WORDS & MUSIC

PREVIOUS OR ALTERNATIVE TITLES:

**2 Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1
NAME OF AUTHOR: JANICE MARIE JOHNSON
Was this author's contribution to the work a "work made for hire"? Yes ___ No X
DATES OF BIRTH AND DEATH: Born 1954 (Year) Died ___ (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) } or { Domiciled in ___ (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ___ No X; Pseudonymous? Yes ___ No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) WORDS & MUSIC

2
NAME OF AUTHOR: PERRY L. KIBBLE
Was this author's contribution to the work a "work made for hire"? Yes ___ No X
DATES OF BIRTH AND DEATH: Born 1949 (Year) Died ___ (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) } or { Domiciled in ___ (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ___ No X; Pseudonymous? Yes ___ No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) MUSIC

3
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"? Yes ___ No ___
DATES OF BIRTH AND DEATH: Born ___ (Year) Died ___ (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of ___ (Name of Country) } or { Domiciled in ___ (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ___ No ___; Pseudonymous? Yes ___ No ___
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution)

**3 Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year 1978
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date April 11, 1978 (Month) (Day) (Year)
Nation U.S.A. (Name of Country)
(Complete this block ONLY if this work has been published.)

**4 Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): CONDUCIVE MUSIC, c/o Janice Johnson, 2927½ Cloverdale Ave. L.A. California; ON TIME MUSIC, c/o Perry L. Kibble, 839 E. 33rd Street, Los Angeles, California

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.) Janice Johnson d/b/a Conducive Music, Los Angeles, CA; Perry Kibble d/b/a On Time Music, Los Angeles, CA

- *Complete all applicable spaces (numbers 5-9) on the reverse side of this page*
- *Follow detailed instructions attached*
- *Sign the form at line 8*

DO NOT WRITE HERE
Page 1 of 2 pages

| | EXAMINED BY | APPLICATION RECEIVED MAY 2 1978 | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|---|---|
| | CHECKED BY | | |
| | CORRESPONDENCE | DEPOSIT RECEIVED MAY 2 1978 | |
| | DEPOSIT ACCOUNT FUNDS USED | REMITTANCE NUMBER AND DATE FEB 17 1978 $6.00 90724 / $4.00 181606 MAY 2 1978 | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**PREVIOUS REGISTRATION:** (5 Previous Registration)

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ......... No ... XX
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form
  - ☐ This is the first application submitted by this author as copyright claimant
  - ☐ This is a changed version of the work, as shown by line 6 of the application
- If your answer is "Yes," give: Previous Registration Number ...................... Year of Registration ..................

**COMPILATION OR DERIVATIVE WORK:** (See instructions) (6 Compilation or Derivative Work)

PREEXISTING MATERIAL (Identify any preexisting work or works that the work is based on or incorporates.)

MATERIAL ADDED TO THIS WORK (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name ..........

Account Number ..........

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.) (7 Fee and Correspondence)

Name Stanley J. Diamond
DIAMOND TILEM & COLDEN
Address 10850 Wilshire Boulevard
Los Angeles, CA 90024

**CERTIFICATION:** * I, the undersigned, hereby certify that I am the: (Check one) (8 Certification (Application must be signed))

☒ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☐ authorized agent of (Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) Janice Marie Johnson

Typed or printed name Janice Marie Johnson Date 4/18/78

MAIL CERTIFICATE TO (9 Address For Return of Certificate)

CONDUCIVE MUSIC
c/o Stanley J. Diamond, Esquire
10850 Wilshire Boulevard, 12th Floor
Los Angeles, California 90024

(Certificate will be mailed in window envelope)

* 17 USC §506(e): FALSE REPRESENTATION - Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

2
BOOGIE OOGIE OOGIE
Words by
JANICE MARIE JOHNSON
Music by
JANICE MARIE JOHNSON and
PERRY KIBBLE
Medium Disco
mf
Repeat 4 times
If you're think - in' you're
too cool to boog - ie,
Copyright © 1978 by Conductive Music and On Time Music
International Copyright Secured Made in U.S.A. All Rights Reserved

3
boy, oh boy have I got news for you.
Ev - 'ry - bod - y here
to - night must boog - ie.
Let me tell you,
you are no ex - cep - tion to the

rule.
Get on
Am7
Dm7
Gm7
Bb
up on the floor 'cause we're gon - na
Am7
Dm7
Gm7
Bb
boog - ie oog - ie oog - ie 'til you just can't boog - ie no more.
Boog - ie, boog - ie no more.

5
you can't boog - ie no more boog -
ie boog - ie no more...
Lis - ten to the mu - sic.
To Coda
ad lib solo
There's no time to waste

Bb
(C Bass)
Let's get this show on the road.
Dm7
C (Bass)
Lis - ten to the mu - sic and let your bod - y flow.
Dm7
The soon - er we be - gin, the long - er we've got to groove.
Bb (C Bass)
Dm7
Lis - ten to the mu - sic and

7
D.S. 𝄋 al
Coda
let your bod - y move.
Now get on
(C Bass)
Dm7
Coda
ad lib
(C Bass)
Dm7
Repeat 6 times
(C Bass)
boog - ie
Repeat 4 times
Boogie Oogie Oogie - 7 - 6

8
Am7
Dm7
G
Bb
(C Bass)
Gm7
Get down boog - le oog - le oog - le, Get down boog -
Am7
Dm7
Gm
le oog - le oog - le, get down boog - le oog - le oog - le,
get down.
Repeat and Fade
Boog-le.

T8561

AGREEMENT made on April 7, 1981 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019 and CONDUCTIVE MUSIC, INC.

a California Corporation XXXXXXXXXXX

XXXXXXXX, whose address is c/o Parks, Adams and Palmer 400 South Beverly Dr. #400 Beverly Hills, California 90212.

WITNESSETH:

FIRST: The term of this agreement shall be the period from July 1, 1980 to March 31, 1983 and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period, or any such additional five (5) year period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

SECOND: As used in this agreement, the word "works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership or copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all of the works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations.

C. The non-exclusive right to adapt or arrange any part or all of any of the works for performance purposes, and to license others to do so.

FOURTH:

A. The rights granted to BMI by subparagraph A of paragraph THIRD hereof shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta, or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for and performed as part of a theatrical or television film, (2) a score originally written for and performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher retains the right to issue non-exclusive licenses for performances of a work or works (other than to another performing rights licensing organization) provided that within ten (10) days of the issuance of such license BMI is given written notice of the titles of the works and the nature of the performances so licensed by Publisher.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the works in which BMI has performing rights:

(1) For performances of works on broadcasting stations in the United States, its territories and possessions BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

It is acknowledged that BMI licenses the works of its affiliates for performance by non-broadcasting means, but that unless and until such time as feasible methods can be devised for tabulation of and payment for such performances, payment will be based solely on broadcast performances. In the event that during the term of this agreement BMI shall establish a system of separate payment for non-broadcasting performances, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of works outside of the United States, its territories and possessions BMI will pay to Publisher all monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the works after the deduction of BMI's then current handling charge applicable to its affiliated publishers.

(3) In the case of works which, or rights in which, are owned by Publisher jointly with one or more other publishers who have granted performing rights therein to BMI, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the foregoing provisions of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance as to which a direct license as de-

...scribed in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publisher or the writer.

SIXTH: BMI will furnish statements to Publisher at least twice during each year of the term showing the number of performances of the works as computed pursuant to subparagraph A(1) of paragraph FIFTH hereof, and at least once during each year of the term showing the monies received by BMI referred to in subparagraph A(2) of [illegible]. Each such statement shall be accompanied by payment of the sum thereby shown to be [illegible] to all proper deductions, if any, for advances or amounts due to BMI from Publisher.

[illegible]

A: Nothing in this agreement requires BMI to continue to license the works subsequent to the termination of this agreement. In the event that BMI continues to license any or all of the works, however, BMI shall continue to make payments to Publisher for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such works to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis [illegible] performance rates generally paid by BMI to its affiliated publishers for similar performances of [illegible]. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant [illegible] or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly on demand. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by any of the works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers.

C. In the event that BMI has reason to believe that Publisher will receive or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances [illegible] the works during a period when such works were licensed by BMI pursuant to this agreement, BMI [illegible] to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI of the amount so paid to Publisher by such other organization or that Publisher has not been so paid. In the event that Publisher has been so paid, the monies payable by BMI to Publisher for such performances during such period shall be reduced by the amount of the payment from such other organization. In the event that Publisher does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by the statements rendered to Publisher prior to the effective date of such termination, there is an indebtedness from Publisher to BMI, for advances or otherwise, such termination shall not be effective [struck text] unless and until sixty (60) days after such indebtedness shall be paid by Publisher or until sixty (60) days after a statement is rendered by BMI at its normal accounting period showing that the amount of such indebtedness has been fully recouped by BMI.

INITIAL HERE

NINTH: A: BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any work which in BMI's opinion (1) is similar to a previously existing composition and might constitute a copyright infringement, or (2) has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition, or (3) is offensive, in bad taste or against public morals, or (4) is not reasonably suitable for performance.

B. In the case of works which in the opinion of BMI are based on compositions in the public dom[illegible] at any [illegible] notice to Publisher, either (1) to exclude any such work from [illegible] entitled to receive only a stated fraction of the full credit that [illegible] performances thereof.

C. In the event that any work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such work, to terminate all rights in such work granted to BMI herein and all such rights of BMI in such work shall revert to Publisher thirty (30) days after the date of such notice from Publisher to BMI.

TENTH: A. With respect to each of the works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) Two copies of a completed clearance sheet in the form supplied by BMI, unless a cue sheet with respect to such work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other works, such copy need be furnished only if requested by BMI pursuant to subsection (c) of subparagraph D(2) of this paragraph TENTH.

(3) If such work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, composers, publisher and nature and duration of the use of the work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance sheet or cue sheet shall constitute a warranty by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the works listed thereon has been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is

afforded; and to give BMI prompt written notice of the date and number of copyright registration and/or renewal of each work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To record in the United States Copyright Office in accordance with the Copyright Law of the United States any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the works.

(c) To obtain and deliver to BMI copies of: unpublished and published works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any of the documents referred to in sub-section (b) above.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any work shall revert to the writer or the writer's representative, or (2) copyright protection of any work shall terminate.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments [illegible] undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive [illegible] Publisher and are free from all encumbrances and [illegible] such rights will not constitute [illegible] right or violation of any right of, or unf[illegible] any person, firm, corporation or association.

B. Except with respect to works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance sheet or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has exclusive performing rights in each of the works by virtue of written grants thereof to Publisher signed by all the authors and composers or other owners of such work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel [illegible] claim, of whatever nature arising from or in connection with the exercise of any [illegible] in this agreement; provided, however, that the obligat[illegible] under [illegible] not apply to any matter added to, or changes made in, any [illegible] its licensees.

B. Upon the receipt by any of the parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher [illegible] and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement [illegible] thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled [illegible]

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of the said rights, and in BMI's sole judgment to join Publisher and/or others in whose [illegible] any of the works may stand, and to discontinue, compromise or refer to arbitration, any such [illegible] or to make any other disposition of the disputes in relation to th[illegible] any action or proceeding commenced by BMI pursuant to the provisions of this paragraph [illegible] at its sole expense and for its sole benefit.

FOURTEENTH:

[illegible] heretofore entered into, and may during the term of [illegible] licensing organizations for the licensing of public per[illegible] United States, its territories and [illegible] BMI agrees to permit Pu[illegible] works for an[illegible] for which [illegible] that [illegible] contract [illegible] such [illegible] this by [illegible] lified [illegible] rights lice[illegible] Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the works in any foreign territory as part of an agreement for the publication, exploitation or representation of such works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the works are granted for any foreign territory. Such notice shall set forth the title of the work, the country or countries involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the foreign territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any foreign territory.

C. In the event that BMI transmits to Publisher performance royalties designated as the writer's share of performance royalties earned by any of the works in any foreign territory, Publisher shall promptly pay such royalties to the writer or writers of the works involved. If Publisher is unable for any reason to locate and make payment to any of the writers involved within six (6) months from the date of receipt, the amounts due such writers shall be returned to BMI.

FIFTEENTH:

A. Publisher agrees that Publisher, its agents, employees, representatives or affiliated companies, will not directly or indirectly during the term of this agreement:

(1) Solicit or accept payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicit or accept manuscripts from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permit Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submit to BMI, as one of the works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher agrees that Publisher, its agents, employees or representatives will not directly or indirectly during the term of this agreement make any effort to ascertain from, or offer any inducement or consideration to, anyone, including but not limited to any broadcasting licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances."

C. Publisher agrees to notify BMI promptly in writing (1) of any change of firm name of Publisher, and (2) of any change of twenty percent (20%) or more in the ownership thereof.

D. In the event of the violation of any of the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall have the right, in its sole discretion, to terminate this agreement by giving Publisher at least thirty (30) days' notice by registered or certified mail. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by it pursuant to paragraph TWENTIETH hereof shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher pursuant to paragraph TWENTIETH hereof and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH: Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold absolute title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all works for which clearance sheets shall have theretofore been submitted to BMI and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said works in accordance with the terms and conditions of this agreement.

EIGHTEENTH: Any controversy or claim arising out of, or relating to, this agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association, and judgment upon the award of the arbitrator may be entered in any court having jurisdiction thereof. Such award shall include the fixing of the expenses of the arbitration, including reasonable attorney's fees, which shall be borne by the unsuccessful party.

NINETEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH: Publisher agrees to notify BMI's Department of Performing Rights Administration promptly in writing of any change in its address. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address so furnished by Publisher.

TWENTY-FIRST: This agreement cannot be changed orally and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND: In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

TWENTY-THIRD: This agreement, as of its effective date, cancels and supersedes the agreement between the parties dated May 14, 1980 and all modifications thereof (herein called the "Superseded Agreement"). All works embraced by the Superseded Agreement shall be deemed embraced by this agreement.

It is agreed that any part of any advances heretofore made to Publisher pursuant to the Superseded Agreement which shall not have been recouped by performances of works up to the effective date of this agreement shall be deemed to be an advance against all monies which may become payable to Publisher pursuant to this agreement and any extensions or modifications thereof or substitutions therefor.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By [signature]

[illegible] MUSIC, INC.

By [signature] (Title of Signer) President

Janice M. Johnson

E4579

600352

**BMI** AGREEMENT made on November 3, 1995 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and SPIRIT ONE MUSIC A Division Of Spirit Music Group Inc

a DELAWARE corporation ~~doing business as~~ XXXXXXXXXX ("Publisher"), whose address is 137 Fifth Avenue 8th Floor New York, NY 10010

**WITNESSETH:**

**FIRST:** The term of this agreement shall be the period from January 1, 1995 to December 31, 1999 and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period.

**SECOND:** As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

**THIRD:** Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

**FOURTH:** Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written f[illegible] or perf[illegible] as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, [illegible] (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work [illegible] in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within [illegible] (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

**FIFTH**

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar perf[illegible] [illegible] similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher [illegible] BMI in the United States from any performing rights licensing organization which are designated by such organization [illegible] share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge [illegible] to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher of all the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D(2) of this paragraph TENTH.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

U2908266001

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment [illegible] Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise [illegible] any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher [illegible] and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works [illegible] otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works [illegible]

FOURTEENTH:

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' [illegible] all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation [illegible] territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH: BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement [illegible] ubparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' [illegible] l mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH: Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH: All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH: Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST: This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND: In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By: Charles Feldman

Vice President

SPIRIT ONE MUSIC
A Division Of Spirit Music Group Inc.

By: [signature]

(Title of Signer) PRESIDENT

MARK ENNIS FRIED

**NOTICE!!** *NEW PUBLISHER DATA*

RECEIVED

Date: March 20, 1979

1979 MAR 2? PM 2:42

ACCT DEPT

To: Mr. Edward J. Molinelli

From: Sylvia K. Manuel – Publisher Administration

PUBLISHER: CONDUCIVE MUSIC, INC. formerly CONDUCIVE MUSIC

| | **NEW DATA** | **OLD LISTING** (For Reference Only) |
|---|---|---|
| Name of Publisher: | CONDUCIVE MUSIC, INC. | CONDUCIVE MUSIC |
| Business Address: | c/o Stanley J. Diamond<br>Diamond, Tilem and Colden<br>10850 Wilshire Blvd.<br>Los Angeles, Ca.<br>90024 | 2927 1/2 Cloverdale<br>Los Angeles, Ca.<br>90016 |
| Phone Number: | (213) 879-3444 | (213) 931-6865 |
| Owners: | California Corporation-<br>Janice M. Johnson - 100% Sh | Sole Owner-<br>Janice M. Johnson |
| Officers of Corporation: | Janice M. Johnson - Pres.<br>Stanley J. Diamond - Sec. | |
| Name of Contact | Stanley J. Diamond | |

Authorization attached for Accounting Department Files: per 101 dated January 22, 1979
per subro dated February 5, 1979
dm

c.c.
Duplicating
Foreign Administration
Index Department

c.c. Legal Department
Logging Department
BMI California
BMI Nashville

6/78

FORM 101

3 X

BROADCAST MUSIC, INC.
PUBLISHER ADMINISTRATION
PLEASE SUPPLY THE FOLLOWING

DATE: January 22, 1979

EXACT COMPANY NAME: Conducive Music Inc.

BUSINESS ADDRESS:
(include name of individual    c/o Stanley J. Diamond, Diamond, Tilem & Colden,
if essential to proper
deliver of mail)    10850 Wilshire Boulevard, Los Angeles, California 90024

BUSINESS PHONE: (213) 879-3444

COMPLETE A, B or C

A. INDIVIDUALLY OWNED
   Name of Individual _____
                                        (home address & zip code)

B. PARTNERSHIP
   List all Partners:

| Name | Home address & zip code | % of ownership |
|------|------------------------|----------------|
|      |                        |                |
|      |                        |                |
|      |                        |                |

C. IF BUSINESS IS A FORMALLY ORGANIZED CORPORATION
   1. Indicate STATE in which Incorporated    California
   2. List all Officers:

| Name | Title | Home address & zip code |
|------|-------|------------------------|
| Janice Marie Johnson | President | |
| Stanley J. Diamond | Secretary | ████████████ |

   3. List all stockholders:

| Name | % of ownership | Home address & zip code |
|------|----------------|------------------------|
| Janice Marie Johnson | 100% | Same |

LIST NAME OF INDIVIDUAL BMI CAN CONTACT FOR INFORMATION    Stanley J. Diamond

PLEASE SIGN AND RETURN TO:

Sandra A. Gantz
Broadcast Music, Inc.
6255 Sunset Blvd.
Hollywood, Calif. 90028

X _Janice Marie Johnson President_
Signature of owner or officer    Title

**NOTICE!! NEW PUBLISHER DATA**

Date: April 30, 1979

To: Mr. Edward J. Molinelli

From: Sylvia K. Manuel – Publisher Administration

PUBLISHER: #18572
ON TIME MUSIC, INC.;
formerly ON TIME MUSIC

| | NEW DATA | OLD LISTING (For Reference Only) |
|---|---|---|
| Name of Publisher: | S<br>ON TIME MUSIC, INC. | ON TIME MUSIC |
| Business Address: | c/o Stanley J. Diamond<br>Diamond, Tilem and Colden<br>10850 Wilshire Blvd.<br>Los Angeles, Ca.<br>90024 | 839 East 33rd Street<br>Los Angeles, Ca. |
| Phone Number: | (213) 879-3444 | (213) 234-6695 |
| Owners: | California Corporation-<br>Perry L. Kibble - 100% Sh. | Sole Owner-<br>Perry L. Kibble |
| Officers of Corporation: | Perry L. Kibble - President<br>Stanley J. Diamond - Sec. | |
| Name of Contact | Stanley J. Diamond | |

Authorization attached for Accounting Department Files: per 101 dated January 22, 1979
per subro dated February 16, 1979
dm

Al Zellich

c.c.
Duplicating
Foreign Administration
Index Department

c.c. Legal Department
Logging Department
BMI California
BMI Nashville

BROADCAST MUSIC, INC.
PUBLISHER ADMINISTRATION
PLEASE SUPPLY THE FOLLOWING

DATE: January 22, 1979

EXACT COMPANY NAME: On Time Music Inc.

BUSINESS ADDRESS:
(include name of individual if essential to proper deliver of mail) c/o Stanley J. Diamond, Diamond, Tilem & Colden, 10850 Wilshire Boulevard, Los Angeles, California 90024

BUSINESS PHONE: (213) 879-3444

COMPLETE A, B or C

A. INDIVIDUALLY OWNED
Name of Individual ______ (home address & zip code)

B. PARTNERSHIP
List all Partners:

| Name | Home address & zip code | % of ownership |
|---|---|---|
| | | |
| | | |
| | | |

C. IF BUSINESS IS A FORMALLY ORGANIZED CORPORATION
1. Indicate STATE in which Incorporated California
2. List all Officers:

| Name | Title | Home address & zip code |
|---|---|---|
| ~~Perry L. Kibble~~ | ~~President~~ | [redacted] |
| ~~Stanley J. Diamond~~ | ~~Secretary~~ | |
| | | |

3. List all stockholders:

| Name | % of ownership | Home address & zip code |
|---|---|---|
| Perry L. Kibble | 100% | Same |
| | | |
| | | |

LIST NAME OF INDIVIDUAL BMI CAN CONTACT FOR INFORMATION Stanley J. Diamond

PLEASE SIGN AND RETURN TO:

Sandra A. Gantz
Broadcast Music, Inc.
6255 Sunset Blvd.
Hollywood, Calif. 90028

X Perry L. Kibble President
Signature of owner or officer Title

PUBLISHER RECEIVED FEB 13 1979 RELATIONS

T8572

VOL. 1728 PAGE 322

BMI

AGREEMENT made this 25th day of April , 19 78 , between BROADCAST MUSIC, INC., a New York corporation, whose address is 40 West 57th Street, New York, N.Y. 10019 (hereinafter called "BMI") and Perry Kibble an individual XXXXXXXX doing business under the firm name and style of ON TIME MUSIC whose address is 839 East 33rd Street (Street or Avenue) Los Angeles, (City) California (State) (Zip) (hereinafter called "Publisher").

WITNESSETH:

FIRST: The term of this agreement shall be the period of five (5) years from April 1, 1978 to March 31, 1983, and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period, or any such additional five (5) year period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

SECOND: As used in this agreement, the word "works" shall mean:

A. All musical and dramatico-musical compositions, whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical and dramatico-musical compositions, whether published or unpublished, in which hereafter during the term Publisher acquires ownership or copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, for profit or otherwise, anywhere in the world, any part or all of the works, such rights being granted exclusively to BMI except to the extent of any prior grant listed on clearance sheets or cue sheets submitted pursuant to subparagraph A of paragraph TENTH with respect to works heretofore acquired by Publisher.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcasting stations.

C. The non-exclusive right to adapt, arrange, change and dramatize any part or all of any of the works for performance purposes, and to license others to do so.

FOURTH:

A. The rights granted to BMI by subparagraph A of paragraph THIRD hereof shall not include the right to perform or license the performance of more than one song or aria from an opera, operetta or musical comedy or more than five (5) minutes from a ballet if such performance is accompanied by the dramatic action, costumes or scenery of that opera, operetta, musical comedy or ballet.

B. Publisher, together with all the writers and co-publishers, if any, of a work, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of more than thirty (30) minutes' duration of a work which is an opera, operetta or musical comedy, but this right shall not apply to a work which is the score of a film originally produced for exhibition in motion picture theatres when performed as incorporated in such film, or which is a score originally written for a radio or television program when performed as incorporated in such program.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder, BMI agrees to make the following payments to Publisher with respect to each of the works in which BMI has exclusive performing rights:

(1) For performances of works on broadcasting stations in the United States, its terri-

ractices upon the basis of

ilar performances of simi-

nent shall be estimated by

inces.

s, its territories and pos-

m any performing rights

hare of foreign perform-

ig charge applicable to its

by Publisher jointly with

ayable to Publisher under

blishers, unless BMI shall

the publishers, providing

FTH, BMI shall have no

occurs prior to the date on

work referred to in sub-

nformation referred to in

Copyright Office of the United States of America

THE LIBRARY OF CONGRESS

THIS IS TO CERTIFY THAT THE ATTACHED DOCUMENT WAS RECORDED IN THE COPYRIGHT OFFICE ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

Barbara Ringer

Register of Copyrights

Date of Recordation 6Mar79

Volume 1728 Pages 322-326

BROADCAST MUSIC, INC.
(as owner of performing rights)

PERRY KIBBLE d/b/a
ON TIME MUSIC

VOL. 1728 PAGE 326

| Song Title | Names of Writers | Copyright Registration Date | Number |
|---|---|---|---|
| BOOGIE OOGIE OOGIE | Janice Marie Johnson<br>Perry Kibble | 5/2/78 | Pa 5-715 |



P-LEGAL

BMI

CONDUCIVE MUSIC
c/o Janice Marie Vercher
436 West Garfield Avenue
Glendale, CA 91204

March 16, 1993

Dear BMI Publisher

This will confirm our understanding with respect to the modification of the agreement dated April 25, 1978 between CONDUCIVE MUSIC, INC., a California Corporation (herein called the "former owner") and Broadcast Music, Inc., as modified, (herein called the "basic agreement"):

1. You warrant and represent that all right, title and interest of the former owner in and to the basic agreement and in and to the works embraced thereby has been sold, assigned and transferred to Janice-Marie Vercher, an individual d/b/a CONDUCIVE MUSIC (herein called the "new owner").

2. Effective as of July 1, 1992, the new owner shall be deemed to have acquired all rights and assumed all obligations of the former owner in and to the basic agreement.

Except as herein specifically modified, all of the terms and conditions of the basic agreement are hereby ratified and affirmed.

Very truly yours,

BROADCAST MUSIC, INC.

By [signature]
Vice President

ACCEPTED AND AGREED TO:

CONDUCIVE MUSIC, INC.

By [signature]
Janice M. Johnson (President)

CONDUCIVE MUSIC

By [signature]
Janice-Marie Vercher (Owner)

8730 Sunset Boulevard, Third Floor West, Los Angeles, CA 90069-2211 (310) 659-9109 Fax (310) 657-6947

P-LEGAL

For Internal BMI Use Only
Received

Performing Rights Administration

# BMI

Performing Rights Administration

For Internal BMI Use Only
Entered Via Scope
By:
Verified:

PLEASE SUPPLY THE FOLLOWING INFORMATION

Date 3/16/91

EXACT COMPANY NAME: CONDUCIVE MUSIC

If this is a new name, indicate former name CONDUCIVE MUSIC, INC.

BUSINESS ADDRESS: 436 West Garfield Avenue
(include zip code and name of individual if essential to proper delivery of mail) Glendale, CA 91204

BUSINESS PHONE: 818 (area code) 377-2704

COMPLETE ONE SECTION ONLY
A, B or C

**A. INDIVIDUALLY OWNED:**

Full Name of Individual Janice-Marie Vercher Soc. Sec. No. [redacted]

Home Address as above

Zip Code

**B. PARTNERSHIP:**

Fed. Tax Acct. No.
(If not available request form S.S. #4 from IRS)

**List all Partners**

| FULL NAME | HOME ADDRESS | Soc. Sec. No. | Pctg of Ownership |
|---|---|---|---|
| | Zip Code | | |
| | Zip Code | | |
| | Zip Code | | |

101-7/85Amc

CONTINUED ON REVERSE SIDE

OVER →

**C. FORMALLY ORGANIZED CORPORATION:**

Fed. Tax Acct. No.

Indicate State in which incorporated

**List all Officers**

| FULL NAME | TITLE | HOME ADDRESS |
|---|---|---|
| | | Zip Code |
| | | Zip Code |
| | | Zip Code |

**List all Stockholders**

| FULL NAME | HOME ADDRESS | Pctg of Ownership |
|---|---|---|
| | Zip Code | |
| | Zip Code | |
| | Zip Code | |

**If new corporate name is indicated on reverse side, check one:**

Old corporation has changed its name ☐ (Copy of Certificate of Change of Name filed with Secretary of State must be attached)

New corporation has been formed ☐ (Copy of Certificate of Incorporation filed with Secretary of State must be attached)

PLEASE SIGN AND RETURN TO:

~~XXXXXXXXXXXXXXXXXXXX~~
B.M.I.
8730 Sunset Boulevard
3rd Floor West
Los Angeles, CA 90069

[signature] Owner

Signature of owner, partner or officer — TITLE

Janice-Marie Vercher

(Please print name of person signing)

161-7/88



November 8, 2006

ON TIME MUSIC INC
8301 Big Stone Ct
Fort Worth TX 76123

Dear Sirs/Madams:

This will confirm our understanding with respect to the modification of the agreement dated February 4, 2004 between ON TIME MUSIC INC, a California corporation (herein called the "former owner") and Broadcast Music, Inc., as modified, (herein called the "basic agreement"):

1. You warrant and represent that all right, title and interest of the former owner in and to the basic agreement and in and to the works embraced thereby has been sold, assigned and transferred to ON TIME MUSIC LLC, a Texas limited liability company (herein called the "new owner").

2. The new owner shall be deemed to have acquired all rights and assumed all obligations of the former owner in and to the basic agreement, as of the beginning of the next calendar quarterly period for which BMI has not yet distributed royalties following the execution of this agreement.

Except as herein specifically modified, all of the terms and conditions of the basic agreement are hereby ratified and affirmed.

ACCEPTED AND AGREED TO:

Very truly yours,

BROADCAST MUSIC, INC.

By: [signature]

ON TIME MUSIC INC

BY: [signature]

Title: President

ON TIME MUSIC LLC

BY: [signature]

Title: President



On Time Music, LLC
c/o Janis McQuinton
8301 Big Stone Court
Fort Worth, TX 76132

Dated: July 1, 2006

____________________
____________________
____________________
____________________

Re: Notice of Assignment of Copyrights

Ladies and Gentlemen:

Please be advised that we have sold and assigned Spirit One Music (BMI), A Division of Spirit Music Group, Inc. (hereafter, "Spirit"), all right, title and interest, including the copyright and the right to renew the same as well as all exclusive worldwide administration and collection rights in and to all of the musical compositions and portions thereof with respect to all musical compositions and portions thereof which are owned or controlled by us (hereafter, the "Subject Compositions"). Accordingly, from and after the date set forth above, you are hereby authorized and directed to address all correspondence, inquiries, royalty statements and payments (regardless of when such monies were earned) in respect of the Subject Compositions to Spirit, at the following address:

Spirit One Music (BMI)
137 Fifth Avenue, 8th Floor
New York, New York 10010

Please acknowledge receipt of this notification by signing the enclosed copy and returning it to Spirit (Attention: Buckley Hugo) at the address noted above.

ACKNOWLEDGED:
[ ]

By: ____________________

Very truly yours,
On Time Music, LLC

[signature]

# GOOD TIMES A/K/A RAPPERS' DELIGHT

CERTIFICATE OF COPYRIGHT REGISTRATION

UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER
PA 37-207
PA PAU

This certificate issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

Barbara Ringer
Register of Copyrights
United States of America

EFFECTIVE DATE OF REGISTRATION
June 27 1979
(Month) (Day) (Year)

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**1 Title**

TITLE OF THIS WORK: Good Times

NATURE OF THIS WORK: (See instructions) words and music

PREVIOUS OR ALTERNATIVE TITLES:

**2 Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1

NAME OF AUTHOR: Nile Rodgers
Was this author's contribution to the work a "work made for hire"? Yes No X
DATES OF BIRTH AND DEATH: Born 1952 (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) words and music

2

NAME OF AUTHOR: Bernard Edwards
Was this author's contribution to the work a "work made for hire"? Yes No X
DATES OF BIRTH AND DEATH: Born 1952 (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) words and music

3

NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"? Yes No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of (Name of Country) or Domiciled in (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No Pseudonymous? Yes No
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution)

**3 Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year 1979
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION: Date June (Month) 4 (Day) 1979 (Year)
Nation USA (Name of Country)
(Complete this block ONLY if this work has been published.)

**4 Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):

Chic Music Inc.
110 East 59th Street
New York, NY 10022

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

written agreement

- *Complete all applicable spaces (numbers 5-9) on the reverse side of this page*
- *Follow detailed instructions attached* • *Sign the form at line 8*

DO NOT WRITE HERE
Page 1 of 2 pages

PA 37-207

EXAMINED BY: WH
CHECKED BY:
CORRESPONDENCE: ☐ Yes
DEPOSIT ACCOUNT FUNDS USED ☐
APPLICATION RECEIVED: 27 JUN 1979
DEPOSIT RECEIVED: 27 JUN 1979 27 JUN 1979
REMITTANCE NUMBER AND DATE: 285664 JUN2779
FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**PREVIOUS REGISTRATION:** (5) Previous Registration

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ...... No X
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☐ This is a changed version of the work, as shown by line 6 of the application.
- If your answer is "Yes," give: Previous Registration Number ............ Year of Registration ............

**COMPILATION OR DERIVATIVE WORK:** (See instructions) (6) Compilation or Derivative Work

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name

Account Number

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.) (7) Fee and Correspondence

Name: Chic Music Inc.
Address: 110 East 59th Street (Apt)
New York, NY 10022 (City) (State) (ZIP)

**CERTIFICATION:** * I, the undersigned, hereby certify that I am the: (Check one) (8) Certification (Application must be signed)

☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☐ authorized agent of ............ (Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature (X) Bernard Edwards

Typed or printed name Bernard Edwards Date 6/19/79

(9) Address For Return of Certificate

Chic Music Inc. (Name)
110 East 59th Street (Number, Street and Apartment Number)
New York, New York 10022 (City) (State) (ZIP code)

MAIL CERTIFICATE TO

20 JUL 1979

(Certificate will be mailed in window envelope)

* 17 U.S.C. §506(e): FALSE REPRESENTATION — Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

CERTIFICATE OF COPYRIGHT REGISTRATION 0 2 2 1 0 0 0

**FORM PA**

UNITED STATES COPYRIGHT OFFICE

This certificate issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

REGISTER OF COPYRIGHTS
United States of America

REGISTRATION NUMBER
PA 108-303
PA PAU

EFFECTIVE DATE OF REGISTRATION
18 JUN 1981
(Month) (Day) (Year)

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**1 Title**

TITLE OF THIS WORK: RAPPERS' DELIGHT

NATURE OF THIS WORK: (See instructions) WORDS AND MUSIC

PREVIOUS OR ALTERNATIVE TITLES: GOOD TIMES

**2 Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1. NAME OF AUTHOR: NILE RODGERS
Was this author's contribution to the work a "work made for hire"? Yes ..... No X
DATES OF BIRTH AND DEATH: Born ..... (Year) Died ..... (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) or Domiciled in U.S.A. (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ... No X Pseudonymous? Yes ... No X
AUTHOR OF: (Briefly describe nature of this author's contribution) MUSIC
If the answer to either of these questions is "Yes," see detailed instructions attached.

2. NAME OF AUTHOR: BERNARD EDWARDS
Was this author's contribution to the work a "work made for hire"? Yes ..... No X
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) or Domiciled in U.S.A. (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
AUTHOR OF: (Briefly describe nature of this author's contribution) MUSIC
If the answer to either of these questions is "Yes," see detailed instructions attached.

3. NAME OF AUTHOR: CHIC MUSIC, INC. As employer for hire of G. O'BRIAN
Was this author's contribution to the work a "work made for hire"? Yes X No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) or Domiciled in U.S.A. (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
AUTHOR OF: (Briefly describe nature of this author's contribution) NEW LYRICS
If the answer to either of these questions is "Yes," see detailed instructions attached.

**3 Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year 1979
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION: Date June 27, 1979 (Month) (Day) (Year)
Nation U.S.A. (Name of Country)
(Complete this block ONLY if this work has been published.)

**4 Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
CHIC MUSIC, INC.
9200 Sunset Boulevard Suite 222
Los Angeles, California 90069

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)
By Agreement

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page

DO NOT WRITE HERE

0 0 2 2 1 4 0 0 0 1

EXAMINED BY
CHECKED BY
CORRESPONDENCE
☐ Yes

DEPOSIT ACCOUNT FUNDS USED

APPLICATION RECEIVED 16 JUL 1981

DEPOSIT RECEIVED 16 JUL 1981 16 JUL 1981

REMITTANCE NUMBER AND DATE

FOR COPYRIGHT OFFICE USE ONLY

PA 108-303

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**PREVIOUS REGISTRATION:** (5) Previous Registration

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes X No
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☒ This is a changed version of the work, as shown by line 6 of the application
- If your answer is "Yes," give: Previous Registration Number Pau 37-207 Year of Registration 1979

**COMPILATION OR DERIVATIVE WORK:** (See instructions) (6) Compilation or Derivative Work

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

MUSIC

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

NEW WORDS WITH PIANO ARRANGEMENT WITH GUITAR CHORDS

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name WARNER BROS. MUSIC

Account Number DA 013467

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name WARNER BROS. MUSIC

Address 9200 Sunset Boulevard, Suite #222 (Apt)

Los Angeles, California 90069 (City) (State) (ZIP)

(7) Fee and Correspondence

CERTIFICATION: I, the undersigned, hereby certify that I am the: (Check one) ☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of CHIC MUSIC, INC. (Name of author or other copyright claimant, or owner of exclusive right(s)) of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

(8) Certification (Application must be signed)

Handwritten signature (X) [signature]

Typed or printed name ALBERT KOHN Date 6/2/81

WARNER BROS. MUSIC (Name)

9200 Sunset Boulevard, Suite #222 (Number, Street and Apartment Number)

Los Angeles, California 90069

MAIL CERTIFICATE TO

(Certificate will be mailed ...

(9) Address For Return of Certificate

# [CONT]INUATION SHEET FOR FORM PA

C 0 2 2 1

**FORM PA/CON**
UNITED STATES COPYRIGHT OFFICE

- If at all possible, try to fit the information called for into the spaces provided on Form PA.
- If you do not have space enough for all of the information you need to give on Form PA, use this continuation sheet and submit it with Form PA.
- If you submit this continuation sheet, leave it attached to Form PA. Or, if it becomes detached, clip (do not tape or staple) and fold the two together before submitting them.
- PART A of this sheet is intended to identify the basic application. PART B is a continuation of Space 2. PART C is for the continuation of Spaces 1, 4, or 6. The other spaces on Form PA call for specific items of information, and should not need continuation.

REGISTRATION NUMBER
PA (PA) 108-308 (AU)

EFFECTIVE DATE OF REGISTRATION
16 JUN 1981 (Year)

CONTINUATION SHEET RECEIVED
16 JUN 1981

Page 3 of 3 pages

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

**(A) Identification of Application**

IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on Form PA, submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of Form PA.)

RAPPERS' DELIGHT

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of Form PA.)

CHIC MUSIC, INC. 9200 Sunset Boulevard Suite 222

**(B) Continuation of Space 2**

NAME OF AUTHOR: CHIC MUSIC, INC. As employer for hire of MIKE WRIGHT
Was this author's contribution to the work a "work made for hire"? Yes X No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of U.S.A. (Name of Country) or Domiciled in U.S.A. (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
If the answer to either of these questions is "Yes" see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) NEW LYRICS

NAME OF AUTHOR: CHIC MUSIC, INC. As employer for hire of HANK JACKSON
Was this author's contribution to the work a "work made for hire"? Yes X No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of (Name of Country) or Domiciled in U.S.A. (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X Pseudonymous? Yes No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) NEW LYRICS

NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"? Yes No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of (Name of Country) or Domiciled in (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No Pseudonymous? Yes No
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution)

**(C) Continuation of Other Spaces**

CONTINUATION OF (Check which): ☐ Space 1 ☐ Space 4 ☐ Space 6

# GOOD TIMES

Words and Music by
BERNARD EDWARDS and NILE RODGERS



© 1979 CHIC MUSIC, INC.
All Rights Reserved

3
Em7
Em7sus4
A7sus4
A13
— these are the good times.__
Our new state of mind..
These are the good times.__
Hap-py days are here a-gain.
A ru-mor has it that it's get-ting late.
The time is right for mak-in' friends.
Time march-es on; just can't wait.
Let's get to-geth-er. How 'bout a
The clock keeps turn-in'. Why

Case 2:19-cv-02637-DRH-AKT Document 29-8 Filed 07/10/20 Page 39 of 176 PageID #: 258

E4014
009090

BMI AGREEMENT made on February 21, 1996 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and SONY/ATV SONGS LLC a Limited Liability Company in Delaware xxxxxxxxxxx ("Publisher"), whose address is 8 Music Square West Nashville, TN 37203

WITNESSETH:

FIRST: The term of this agreement shall be the period from October 1, 1995 to September 30, 2000 and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period.

SECOND: As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

FOURTH: Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher, directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A. BMI sh[illegible] ...e the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is simi[illegible] o a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D(2) of this paragraph TENTH.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH: BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH: Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH: All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH: Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST: This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND: In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By ............ Vice President

SONY/ATV SONGS LLC

By ............

(Title of Signer) Manager

RICHARD ROWE

BERNARD EDWARDS
c/o Manatt, Phelps, Rothenberg, Tunney & Phillips
11355 West Olympic Boulevard
Los Angeles, California 90064
Attention: Peter T. Paterno, Esq.

and

NILE RODGERS
c/o Dennis Katz, P.C.
845 Third Avenue
New York, New York 10022

September 1, 1986

Broadcast Music, Inc.
250 West 57th Street
New York, New York 10019

Re: Chic Music, Inc.

Gentlemen:

Reference is made to the agreement between Chic Music, Inc. and you dated September 14, 1979, as the same may have been amended and extended (the "Agreement"). Pursuant to the assignment agreements dated as of May 15, 1984, attached hereto as Exhibit "A" and incorporated by reference herein (the "Assignment Agreements"), Chic Music, Inc. assigned the copyrights in and to the musical compositions subject to the Agreement to Nile Rodgers ("Rodgers"), his successors or assigns and to Bernard Edwards ("Edwards"), his successors or assigns, in the respective shares set forth in the Assignment Agreements.

It is our understanding that the account of Chic Music, Inc. is presently unrecouped. Fifty percent (50%) of this unrecouped balance should be assigned to each Edwards' and Rodgers' respective BMI affiliates.

Any and all notices pursuant to the Agreement should be sent to each Edwards and Rodgers at their respective addresses set forth hereinabove. Any and all royalties and statements pursuant to the agreement should be sent to each Edwards and Rodgers at the following addresses: Bernard Edwards, c/o Jess S. Morgan & Co., 6420 Wilshire Boulevard, Nineteenth Floor, Los Angeles, California 90048, Attention: Wally Franson; and Nile Rodgers, c/o Zolt & Loomis, 60 East 42nd Street, Suite 1442, New York, New York 10017, Attention: Marvin Zolt.

Very truly yours,

Bernard Edwards

Nile Rodgers

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned parties hereby agree to amend that certain assignment agreement executed on behalf of Chic Music, Inc., dated May 15, 1984 and attached hereto as Exhibit "E" and incorporated by reference herein (the "Assignment Agreement"). Except as otherwise provided to the contrary herein, all terms used herein shall have the same meaning as in the Assignment Agreement.

1. Notwithstanding anything to the contrary contained in the Assignment Agreement, the first paragraph of the Assignment Agreement is hereby amended, as of the date hereof, to provide as follows:

> "In consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, CHIC MUSIC, INC., a Delaware Corporation with a principal place of business at 33 Pony Trail, Stamford, Connecticut ("ASSIGNOR"), does hereby sell, assign, transfer and set over unto NILE RODGERS, an individual, his successors and assigns ("ASSIGNEE"), c/o Zolt & Loomis, 60 E. 42nd Street, Suite 1442, New York, New York, 10017, Attention: Marvin Zolt, and BERNARD EDWARDS, his successors and assigns ("ASSIGNEE"), c/o Jess S. Morgan & Co., 6420 Wilshire Boulevard, 19th Floor, Los Angeles, California 90048, Attention: Wally Franson, Fifty Percent (50%) to each Assignee, of the copyrights in and to the following musical compositions which have been duly registered for copyright in the United States Copyright Office in the Assignor's names under the dates and identification numbers set forth below, and Fifty Percent (50%) to each Assignee, of the rights, title and interest of the Assignor, vested and contingent, therein and thereto:"

Subject to the foregoing, the terms and provisions of the Assignment Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the Assignor has caused this agreement to be signed in its corporate name and by its duly

When recorded, return to:

Bernard Edwards
c/o Jess S. Morgan & Company, Inc.
6420 Wilshire Blvd., 19th Floor
Los Angeles, CA 90048

authorized officers, and its corporate seal to be hereunto affixed, as of this 15th day of May, 1984.

CHIC MUSIC, INC.

Bernard Edwards

Nile Rodgers

VOL 2245 PAGE 377

EXHIBIT "E"

ASSIGNMENT

In consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, CHIC MUSIC, INC., a Delaware Corporation with a principal place of business at 33 Pony Trail, Stamford, Connecticut ("ASSIGNOR"), does hereby sell, assign, transfer and set over unto PLAN-9 MUSIC, INC., a Delaware corporation with its principal place of business at 9 Covlee Drive, Westport, Connecticut, and BERNARD EDWARDS PRODUCTIONS, INC., a Delaware corporation with its principal place of business at 55 Hedgebrook Lane, their successors and assigns ("ASSIGNEES"), Fifty Percent (50%) to each Assignee, of the copyrights in and to the following musical compositions which have been duly registered for copyright in the United States Copyright Office in the Assignor's names under the dates and indentification numbers set forth below, and Fifty Percent (50%) to each Assignee, of the rights, title and interest of the Assignor, vested and contingent, therein and thereto:

| Title | Copyright Identification No. | Effective Date | % Interest |
|---|---|---|---|
| AT LAST I AM FREE | PA 55-929 | 11/8/78 | 100.00 |
| BABY DOLL | PA 383-887 | 12/17/81 | 100.00 |
| BACKFIRED | PA 116-716 | 6/7/81 | 100.00 |
| (FUNNY) BONE | PA 55-931 | 11/8/78 | 100.00 |
| BURN HARD | PA 140-448 | 11/23/81 | 100.00 |
| CAN'T STAND TO LOVE YOU | PA 108-234 | 8/2/79 | 100.00 |
| CHARGE PLATES AND CREDIT CARDS | PA 77-178 | 5/13/80 | 100.00 |
| CHIC CHEER | PA 55-924 | 11/8/78 | 100.00 |
| CHIC (EVERYBODY SAY) | PA 158-664 | 10/12/82 | 100.00 |
| CHIP OFF THE OLD BLOCK | PA 77-171 | 6/30/80 | 100.00 |
| CITY LIGHTS | PA 155-409 | 11/5/82 | 100.00 |
| COULD YOU BE MY BABY aka WOULD YOU BE MY BABY | PA 140-442 | 11/23/81 | 100.00 |
| COVER GIRLS | PA 77-179 | 5/13/80 | 100.00 |
| DANCE, DANCE, DANCE | EU 833038 | 10/13/77 | 66.66 |
| DON'T GO | PA 59-000 | 10/19/79 | 100.00 |
| DON'T THROW MY LOVE AWAY | PAU 304-119 | 4/28/81 | 100.00 |
| DREAMGIRL | PA 149-577 | 5/3/82 | 100.00 |
| EASIER TO LOVE | PA 106-659 | 1/31/79 | 100.00 |

| Title | Copyright Identification No. | Effective Date | % Interest |
|---|---|---|---|
| EASY STREET | PA 68-238 | 2/11/80 | 100.00 |
| EST-CE C'EST CHIC | PA 110-219 | 1/1/78 | 100.00 |
| EVERYBODY DANCE | PA 110-218 | 1/1/78 | 100.00 |
| FALLING IN LOVE WITH YOU | PA 110-220 | 1/1/78 | 100.00 |
| FLASHBACK | PA 140-445 | 11/23/81 | 100.00 |
| LE FREAK | PA 126-731 | 9/21/78 | 100.00 |
| FRIEND TO FRIEND | PA 75-957 | 5/22/80 | 100.00 |
| FROSTBITE | PAU 304-10 | 5/28/81 | 100.00 |
| GIVE IT UP | PA 75-955 | 5/22/80 | 100.00 |
| GOOD GIRL NOW aka I'M A GOOD GIRL | PAU 155-956 | 1/30/80 | 100.00 |
| ✓GOOD TIMES aka RAPPER'S DELIGHT | PA 37-207 | | 100.00 |
| GOT TO LOVE SOMEBODY | PA 60-534 | 12/13/79 | 100.00 |
| HANGIN' | PA 158-663 | 10/12/82 | 100.00 |
| HAPPY MAN | PA 55-927 | 11/8/78 | 100.00 |
| HAVE FUN (AGAIN) | PA 75-960 | 5/22/80 | 100.00 |
| HE'S THE GREATEST DANCER | PA 106-655 | 12/27/78 | 100.00 |
| HEY FOOL | PA 155-407 | 11/5/82 | 100.00 |
| HIGH SOCIETY | PA 59-103 | 10/3/79 | 100.00 |
| HOLD IT | PAU 304-121 | 4/28/81 | 100.00 |
| HOLD ME LONELY BOY | PA 59-102 | 10/3/79 | 100.00 |
| HOW TO LOVE | PA 68-238 | 2/11/80 | 100.00 |
| I'M A GOOD GIRL aka GOOD GIRL NOW | PAU 155-956 | 1/30/80 | 100.00 |
| I BELIEVE IN YOU | PA 5-781 | 5/1/78 | 50.00 |
| I CAN LOVE | PAU 304-122 | 4/28/81 | 100.00 |
| I FEEL YOUR LOVE COMIN' | PA 155-405 | 11/5/82 | 100.00 |
| I LIKE LOVE | PAU 34-824 | 7/26/78 | 100.00 |
| I GOT PROTECTION | PA 77-172 | 6/30/80 | 100.00 |
| I'LL CHANGE MY GAME | PAU 304-123 | 4/28/81 | 100.00 |
| I LOVE MY LADY | PAU 422-743 | 7/16/82 | 100.00 |
| I LOVE YOU MORE | PA 77-173 | 6/30/80 | 100.00 |

ASSIGNMENT

ASSIGNOR(S): NILE RODGERS

ASSIGNEE(S): TOMMY JYMI, INC.

PORTION CONVEYED: ALL OF HIS UNDIVIDED 50% INTEREST

For valuable consideration, ASSIGNOR hereby assigns, transfers, sets over an conveys to ASSIGNEE that portion of all right, title and interest set forth above in and to the following musical composition(s):

See Schedule "A"

including the copyrights and proprietary rights therein and in any and all versions of said musical composition(s), and any renewals and extensions thereof (whether presently available or subsequently available as the result of intervening legislation) in the United States of America and elsewhere throughout the world, and further including any and all causes of action for infringement of the same, past, present and future, and all proceeds from th foregoing accrued and unpaid and hereafter accruing.

IN WITNESS WHEREOF, the undersigned has (have) executed the foregoing Assignment as of this 1st day of June, 1986.

NILE RODGERS

Doc. 0392C

SCHEDULE "A"

| | COPYRIGHT NUMBER & DATE | EFFECTIVE DATE | % INTEREST |
|---|---|---|---|
| AT LAST I AM FREE | Pa 55-929 | 11/8/78 | 50.00 |
| BABY DOLL | Pa 383-887 | 12/17/81 | 50.00 |
| BACKI:RED | Pa 116-716 | 6/7/81 | 50.00 |
| (FUNNY) BONE | Pa 55-931 | 11/8/78 | 50.00 |
| BURN !ARD | Pa 140-448 | 11/23/81 | 50.00 |
| CAN'T STAND TO LOVE YOU | Pa 108-234 | 8/2/79 | 50.00 |
| CHARGE PLATES AND CREDIT CARDS | Pa 77-178 | 5/13/80 | 50.00 |
| CHIC CHEER | Pa 55-924 | 11/8/78 | 50.00 |
| CHIC (EVERYBODY SAY) | Pa 1[illegible] 664 | 10/12/82 | 50.00 |
| CHIP OFF THE OLD BLOCK | Pa 77-171 | 6/30/80 | 50.00 |
| CITY LIGHTS | Pa 155-409 | 11/5/82 | 50.00 |
| COULD YOU BE MY BABY aka WOULD YOU BE MY BABY | Pa 140-442 | 11/23/81 | 50.00 |
| COVER GIRLS | Pa 77-179 | 5/13/80 | 50.00 |
| DANCE, DANCE, DANCE | Eu 833038 | 10/13/77 | 50.00 |
| DON'T GO | Pa 59-000 | 10/19/79 | 50.00 |
| DON'T THROW MY LOVE AWAY | Pau 304-119 | 4/28/81 | 50.00 |
| DREAMGIRL | Pa 149-577 | 5/3/82 | 50.00 |
| EASIER TO LOVE | Pa 106-659 | 1/31/79 | 50.00 |

Doc. 0392C

VOL. 22

SCHEDULE "A"

| | COPYRIGHT NUMBER & DATE | EFFECTIVE DATE | % INTEREST |
|---|---|---|---|
| EASY STREET | Pa 68-238 | 2/11/80 | 50.00 |
| EST-CE C'EST CHIC | Pa 110-219 | 1/1/78 | 50.00 |
| EVERYBODY DANCE | Pa 110-218 | 1/1/78 | 50.00 |
| FALLING IN LOVE WITH YOU | Pa 110-220 | 1/1/78 | 50.00 |
| FLASHBACK | Pa 140-445 | 11/23/81 | 50.00 |
| LE FREAK | Pa 126-731 | 9/21/78 | 50.00 |
| FRIEND TO FRIEND | Pa 75-957 | 5/22/80 | 50.00 |
| FROSTBITE | Pau 304-10 | 5/28/81 | 50.00 |
| GIVE IT UP | Pa 75-955 | 5/22/80 | 50.00 |
| GOOD GIRL NOW aka I'M A GOOD GIRL | Pau 155-956 | 1/30/80 | 50.00 |
| ✔ GOOD TIMES aka RAPPER'S DELIGHT | Pa 37-207 | 6/4/79 | 50.00 |
| GOT TO LOVE SOMEBODY | Pa 60-534 | 12/13/79 | 50.00 |
| HANGIN' | Pa 158-663 | 10/12/82 | 50.00 |
| HAPPY MAN | Pa 55-927 | 11/8/78 | 50.00 |
| HAVE FUN (AGAIN) | Pa 75-960 | 5/22/80 | 50.00 |
| HE'S THE GREATEST DANCER | Pa 106-655 | 12/27/78 | 50.00 |
| HEY FOOL | Pa 155-407 | 11/5/82 | 50.00 |
| HIGH SOCIETY | Pa 59-103 | 10/3/79 | 50.00 |

**ASSIGNMENT**

**EXHIBIT A-1**

to an agreement between TOMMY JYMI, INC. (BMI) and PLAN NINE MUSIC, INC. (ASCAP), on the one hand, and SONY SONGS INC. (BMI) and SONY TUNES INC. (ASCAP), on the other, dated January 3, 1995 (SMP 94-71).

(Reference - Subparagraph 1.01(a))

KNOW ALL MEN BY THESE PRESENTS:

The undersigned:

Name: NILE RODGERS

Address: c/o Dennis Katz, Esq., 845 Third Avenue, Suite 1400, New York, New York 10022
("Assignor")

for good and valuable consideration now received, hereby sells and assigns unto:

Name: TOMMY JYMI, INC. (BMI)

Address: c/o Dennis Katz, Esq., 845 Third Avenue, Suite 1400, New York, New York 10022
("First Assignee"),

and its successors and assigns forever, one hundred percent (100%) of Assignor(s)' interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of the undersigned Assignor(s) in and to, all musical compositions Assignor owns, in whole or part, including without limitation, the musical composition(s) listed on Schedule A annexed (all such compositions hereinafter collectively the "Compositions"), throughout the world, which First Assignee, in turn, for good and valuable consideration now received, hereby sells and assigns unto:

Name: SONY SONGS INC. (BMI)

Address: 550 Madison Avenue, New York, New York 10022-3211
("Second Assignee")

and its successors and assigns forever, an undivided one hundred percent (100%) of Assignor(s)' interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of Assignor(s) in and to, the Composition(s), throughout the world.

THIS INSTRUMENT is subject to all of the terms and conditions of the agreement dated January 3, 1995 between First Assignee and Second Assignee.

DATED: January 3, 1995

NILE RODGERS

TOMMY JYMI, INC.

By

ACKNOWLEDGEMENTS

STATE OF NEW YORK )
) ss
COUNTY OF NEW YORK )

On DECEMBER 23, 1994, before me personally came Nile Rodgers, known to me to be the individual described in and who executed the foregoing instrument, and acknowledged to me that he executed it.

Notary Public, State of New York
No. 31-7776300
Qualified in New York County
Commission Expires October 31, 1996

STATE OF NEW YORK )
) ss
COUNTY OF NEW YORK )

On DECEMBER 23, 1994, before me personally came NILE RODGERS, known to me, who, duly sworn by me, did depose and say that he resides at 21 [illegible] NY, NY, that he is the PRESIDENT of TOMMY JYMI, INC., the corporation described in and which executed the foregoing instrument, and that he signed it by order of the Board of Directors of the corporation.

DATED:

Notary Public, State of New York
No. 31-7776300
Qualified in New York County
Commission Expires October 31, 1996

**SCHEDULE A**

to an agreement between TOMMY JYMI, INC. (BMI) and PLAN NINE MUSIC, INC. (ASCAP), on the one hand, and SONY SONGS INC. (BMI) and SONY TUNES INC. (ASCAP), on the other, dated January 3, 1995 (SMP 94-71).

(Reference Subparagraph 1.01(a))

**Compositions**

| Title | Writer(s) | Publisher Splits | U.S. Copyright Registration No./Date |
|---|---|---|---|
| AT LAST I AM FREE | NILE RODGERS | | |
| BABY DOLL | NILE RODGERS | | |
| BACKFIRED | NILE RODGERS | | |
| X BELIEVER | NILE RODGERS | | |
| BURN HARD | NILE RODGERS | | |
| CAN'T STAND TO LOVE YOU | NILE RODGERS | | |
| CHARGE PLATES & CREDIT CARDS | NILE RODGERS | | |
| CHIC (EVERYBODY SAY) | NILE RODGERS | | |
| CHIC CHEER | NILE RODGERS | | |
| CHICISM | NILE RODGERS | | |
| CHIC MYSTIQUE | NILE RODGERS | | |
| CHIC MYSTIQUE (REPRISE) | NILE RODGERS | | |
| CHIP OFF THE OLD BLOCK | NILE RODGERS | | |
| CITY LIGHTS | NILE RODGERS | | |
| COVER GIRLS | NILE RODGERS | | |
| DANCE DANCE DANCE (YOWSAH Y) | NILE RODGERS | | |
| DANCE DANCE DANCE | NILE RODGERS | | |
| DANCE DANCE DANCE | NILE RODGERS | | |
| DOIN' THAT THING TO ME | NILE RODGERS | | |
| DON'T GO | NILE RODGERS | | |
| DREAMGIRL | NILE RODGERS | | |
| EASIER TO LOVE | NILE RODGERS | | |
| EASY STREET | NILE RODGERS | | |
| EST CE QUE CEST | NILE RODGERS | | |
| EVERYBODY DANCE | NILE RODGERS | | |
| EVERYTHING'S GONNA BE ALRIGHT | NILE RODGERS | | |
| FALLING IN LOVE WITH YOU | NILE RODGERS | | |
| FLASHBACK | NILE RODGERS | | |

NR

JCS

AT LAST I AM
BABY DOLL
BACKFIRED
BELIEVER
BURN HARD

| | |
|---|---|
| FRIEND TO FRIEND | NILE RODGERS |
| FUNNY BONE | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (REMIX) | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (● 12.307) | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (● 40.00) | NILE RODGERS |
| X GIVE IT UP! | NILE RODGERS |
| X GIVE ME THE LOVIN' | NILE RODGERS |
| X GO GO DANCER (REMIX) | NILE RODGERS |
| ✓ GOOD TIMES | NILE RODGERS |
| GOT TO LOVE SOMEBODY | NILE RODGERS |
| HANGIN' | NILE RODGERS |
| HAPPY MAN | NILE RODGERS |
| HAVE FUN (AGAIN) | NILE RODGERS |
| HE'S THE GREATEST DANCER | NILE RODGERS |
| HEY FOOL | NILE RODGERS |
| HIGH | NILE RODGERS |
| HIGH SOCIETY | NILE RODGERS |
| HOLD IT | NILE RODGERS |
| HOLD ME LONELY BOY | NILE RODGERS |
| HOW TO LOVE | NILE RODGERS |
| X I'M A GOOD GIRL NOW | NILE RODGERS |
| I'M COMING OUT | NILE RODGERS |
| I BELIEVE IN YOU | NILE RODGERS |
| I FEEL YOUR LOVE COMIN' ON | NILE RODGERS |
| I GOT IT | NILE RODGERS |
| I GOT PROTECTION | NILE RODGERS |
| I LIKE LOVE | NILE RODGERS |
| I LOVED YOU MORE | NILE RODGERS |
| IN IT TO WIN IT | NILE RODGERS |
| IN LOVE WITH MUSIC | NILE RODGERS |
| THE INTRODUCTION | NILE RODGERS |
| IT'S ALRIGHT (TO LOVE ME) | NILE RODGERS |
| I WANT YOU LOVE | NILE RODGERS |
| I WANT TO FALL IN LOVE | NILE RODGERS |
| JAM WAS MOVING | NILE RODGERS |
| JUDY | NILE RODGERS |
| JUSAGROOVE | NILE RODGERS |
| JUST OUT OF REACH | NILE RODGERS |
| KING OF THE WORLD | NILE RODGERS |
| KISSING WITH CONFIDENCE | NILE RODGERS |
| LE FREAK | NILE RODGERS |
| LET'S GO ON VACATION | NILE RODGERS |
| LOST IN MUSIC | NILE RODGERS |
| M.M.F.T.C.F. | NILE RODGERS |

N ✓ JC

SONY SONGS INC.
EPIC/SOLAR INC.
SONY LATIN MUSIC PUBLISHING, INC.
550 Madison Avenue
New York, NY 10022

November 1, 1995

BMI
320 West 57th Street
New York, NY 10019

Re: **Sony Songs Inc., Epic/Solar Inc. and Sony Latin Music Publishing Inc.**

Gentlemen:

The undersigned have this date sold and assigned all of the musical compositions in the above identified catalogs to Sony/ATV Songs LLC. Please change your records accordingly. All of the catalogs should be maintained in separate special accounts for all purposes, including awards and accountings. All accountings should be sent to Sony/ATV Music Publishing LLC, 8 Music Square West, Nashville, TN 37202 Attn: Director of Publishing Administration. All notices and other communications should be sent to Sony/ATV Music Publishing LLC, 550 Madison Avenue, New York, NY 10022 Attn: Vice President of Business Affairs and Administration.

Very truly yours,

SONY SONGS INC.

By:____________________

EPIC/SOLAR INC.

By:____________________

SONY LATIN MUSIC PUBLISHING INC.

By:____________________





PHA
101-W9F

Legal & Business Affairs, Performing Rights

BMI INTEROFFICE MEMORANDUM

**TO:** *Louise O'Sullivan* cc: Gary Cannizzo (Complete File for microfilming)

**FROM:** *Gary F. Roth*

**DATE:** *May 17, 2000*

**RE:** *Bernard Edwards, Deceased (Current Affiliation: ASCAP) (Schedule D), # 101315* ...Bernard Edwards (Estate) X3229
*Bernard's Other Music, # 26748*

Attached is a letter agreement dated February 29, 2000, with publisher basic agreement (Exhibit "A") which cancels and supersedes the prior agreement with Bernard's Other Music

Agreement With: The Bernard Edwards Company, L.L.C., Wallace D. Franson, Executor of the Estate of Bernard Edwards and as Trustee of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust

Date of Basic Agreement: February 28, 2000

Period of Basic Agreement: July 1, 1999, to June 30, 2004, with automatic five-year renewals unless canceled.

All works cleared under the prior basic agreement is covered by the new basic.

Royalties: There are no withheld royalties on either the writer account of Bernard Edwards or the publisher account of Bernard's Other Music. All future royalties are to be made payable and mailed as follows:

The Bernard Edwards Co., L.L.C.
5750 Wilshire Blvd., Suite 590
Los Angeles, CA 90036

ENTERED ON DATA BASE
BY 6/2/2000
Deleted Cart Type "A"
VERIFIED 6/5/2000

Statements and Correspondence: Sent to the same address

Federal Tax ID Number: 95-4765394

Documents Attached for Microfilming:

1. Letter Agreement with Exhibit "A"
2. W-9 IRS Form for The Bernard Edwards Co., L.L.C.
3. 101 Form for The Bernard Edwards Co., L.L.C.
4. Attachment for 101 listing members, percent of ownership and Tax ID Numbers
5. Articles of Organization for a Connecticut Limited Liability Company
6. Decree RE: Administration and Distribution
7. Assignment of Copyright by the Michael Edwards Trust
8. Assignment of Copyright by the David Edwards Trust
9. Assignment of Copyright by the Mark Edwards Trust
10. Assignment of Copyright by the Portia Edwards Trust
11. Assignment of Copyright by the Leah Edwards Trust
12. Assignment of Copyright by the Bernard Edwards, Jr. Trust
13. Assignment of Copyright by the The Bernard Edwards Company, L.L.C.

GR:wj

cc: J. Ruiz





February 29, 2000

Wallace D. Franson, Trustee
c/o Jess S. Morgan & Company, Inc.
5750 Wilshire Blvd, Ste. 590
Los Angeles, CA 90036-3697

RE: Estate of Bernard Edwards

Dear Mr. Franson:

This will confirm our understanding as follows:

We are entering into the publisher agreement annexed hereto as Exhibit "A" (herein called the "basic agreement") in reliance upon the following warranties and representations:

I.      You warrant and represent:

(a)     that Bernard Edwards, hereinafter called the "decedent", died testate and a resident of the State of Connecticut on April 18, 1996; and

(b)     that you were appointed Executor of the Estate of Bernard Edwards by the Westport Probate Court, Connecticut, on June 3, 1996; and

(c)     that pursuant to Assignments dated January 1, 2000, from you as Executor of the Estate of Bernard Edwards, the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust were each assigned an 8.33% Copyright interest and an 16.67% Administration Rights interest in and to all of the works written by Bernard Edwards and published by Bernard's Other Music; and

(d)     that you as Trustee of each of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust have assigned to the Bernard Edwards Company, LLC (the "Company") all of the rights held by said Trusts with respect to the works written and published by the decedent, and that during the term of the basic agreement, the Company will own and control all of

the rights granted to BMI pursuant to the basic agreement with respect to all works published by the decedent which are embraced by the basic agreement as well as all works formerly embraced by the agreement between the decedent and BMI dated April 10, 1981, which BMI has continued to license for the decedent as a writer; and

(e) that the Estate of Bernard Edwards is now closed; and

(f) that notwithstanding any representations decedent may have made to BMI during his lifetime, you have not purported to grant or assign to any other performing rights organization the right to license performances of the works embraced by the basic agreement or by the agreement between the decedent and BMI dated April 10, 1981; and that BMI has the right to license the writer share in all of the works written by Bernard Edwards through June 30, 1983, and the publisher share on all of the works of Bernard's Other Music; and

(g) that all debts, taxes, and expenses of any kind which are due, or might become due, on behalf of the decedent or his estate have been paid.

2. The basic agreement shall be deemed to contain the following additions and modifications:

(a) The date of the basic agreement shall be deemed to be February 28, 2000.

(i) In Paragraph numbered FIRST: the word "period" shall mean the term from July 1, 1999, to June 30, 2004, and continuing thereafter for additional terms of five (5) years each unless terminated by either party by the end of said initial term or any additional term upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

3. The basic agreement, as of its effective date, shall cancel and supersede the agreement between the decedent doing business as Bernard's Other Music and BMI dated January 19, 1981, and all modifications thereof. All works embraced by said agreement shall be deemed included in the basic agreement.

4. In reliance upon the warranties and representations contained above, BMI agrees to pay The Bernard Edwards Company, LLC, any royalties that have been withheld and which may hereafter become due on behalf of the decedent doing business as Bernard's Other Music under the basic agreement, as well as any royalties which

become payable for performances of the works of Bernard Edwards as a writer with respect to his works existing as of June 30, 1983.

6. In consideration of the foregoing, you all agree, jointly and severally, to indemnify, save and hold BMI free and harmless from and against any and all claims, actions, demands, recoveries and judgments of any and all creditors, heirs, assignees or successors of the decedent in connection with aforesaid agreements dated January 19, 1981, and April 10, 1981, and any modifications thereof or any payments to The Bernard Edwards Company, LLC by BMI under said agreements and the basic agreement by virtue of your warranties and representations contained herein.

Very truly yours,

BROADCAST MUSIC, INC.

By: [signature]
Gary F. Roth
Assistant Vice President

ACCEPTED AND AGREED TO:

THE BERNARD EDWARDS COMPANY, L.L.C.

By: [signature]
~~President~~ Manager

95-4765394
Federal Tax ID Number of The Bernard Edwards Company, L.L.C

[signature]
Wallace D. Franson, as Executor of the Estate of Bernard Edwards and as Trustee of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust

Exhibit "A"

BMI AGREEMENT made on ........................................................ between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and ..........................................

..........................................................................................

a ........................................ doing business as ........................................

........................................ ("Publisher"), whose address is ........................................

..........................................................................................

WITNESSETH:

FIRST: The term of this agreement shall be the period from ..........................................

to ........................................ and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period.

SECOND: As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

FOURTH: Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher of all the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D(2) of this paragraph TENTH.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2)  At BMI's request:

(a)  To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b)  To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E.  Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH:  Publisher warrants and represents that:

A.  Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.  Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A.  Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.  Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.  In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH:  Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit.  Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder.  In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A.  It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories").  Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof.  Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B.  Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory.  Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share.  Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH:  BMI shall have the right, in its sole discretion, to terminate this agreement if:

A.  Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1)  Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2)  Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH: Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH: All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH: Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST: This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND: In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By............................................................
Vice President

..............................................................

By............................................................

(Title of Signer)..........................................

Form **W-9** (Rev. March 1994) Department of the Treasury Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

Give form to the requester. Do NOT send to the IRS.

Please print or type

Name (If joint names, list first and circle the name of the person or entity whose number you enter in Part I below. See instructions on page 2 if your name has changed.)
The Bernard Edwards Co., L.L.C.

Business name (Sole proprietors see instructions on page 2.)

Please check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☒ Other ► Ltd. Liability Corp.

Address (number, street, and apt. or suite no.)
5750 Wilshire Blvd., Suite 590

Requester's name and address (optional)

City, state, and ZIP code
Los Angeles, CA 90036

**Part I** Taxpayer Identification Number (TIN)

List account number(s) here (optional)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). For sole proprietors, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How To Get a TIN** below.

*Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number: | | | | | | |

OR

Employer identification number: 95-4765394

**Part II** For Payees Exempt From Backup Withholding (See Part II instructions on page 2)

►

**Part III** Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

**Certification Instructions.**—You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, the acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (Also see Part III instructions on page 2.)

Sign Here Signature ► Wallace D. Franson, Trustee Date ► 4/2[illegible]

*Section references are to the Internal Revenue Code.*

**Purpose of Form.**—A person who is required to file an information return with the IRS must get your correct TIN to report income paid to you, real estate transactions, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA. Use Form W-9 to give your correct TIN to the requester (the person requesting your TIN) and, when applicable, (1) to certify the TIN you are giving is correct (or you are waiting for a number to be issued), (2) to certify you are not subject to backup withholding, or (3) to claim exemption from backup withholding if you are an exempt payee. Giving your correct TIN and making the appropriate certifications will prevent certain payments from being subject to backup withholding.

*Note: If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What Is Backup Withholding?**—Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that could be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, your payments will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS tells the requester that you furnished an incorrect TIN, or

3. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN. See the Part III instructions for exceptions.

Certain payees and payments are exempt from backup withholding and information reporting. See the Part II instructions and the separate Instructions for the Requester of Form W-9.

**How To Get a TIN.**—If you do not have a TIN, apply for one immediately. To apply, get **Form SS-5**, Application for a Social Security Number Card (for individuals), from your local office of the Social Security Administration, or **Form SS-4**, Application for Employer Identification Number (for businesses and all other entities), from your local IRS office.

If you do not have a TIN, write "Applied For" in the space for the TIN in Part I, sign and date the form, and give it to the requester. Generally, you will then have 60 days to get a TIN and give it to the requester. If the requester does not receive your TIN within 60 days, backup withholding, if applicable, will begin and continue until you furnish your TIN.

| TIN | OWNER SH'P | MEMBERS: |
|---|---|---|
| 95-7050894 | 1/6 | Wallace D. Franson, Trustee of the Bernard Edwards, Jr. Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050893 | 1/6 | Wallace D. Franson, Trustee of the Mark Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050892 | 1/6 | Wallace D. Franson, Trustee of the David Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050891 | 1/6 | Wallace D. Franson, Trustee of the Portia Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050895 | 1/6 | Wallace D. Franson, Trustee of the Michael Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050890 | 1/6 | Wallace D. Franson, Trustee of the Leah Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |



SECRETARY OF THE STATE
30 TRINITY STREET
P.O. BOX 150470
HARTFORD, CT  06115-0470

MAY  4,2000

Jess S. Morgan & Company

MAY - 8 2000

RM

IRCHARD J. POBER
P.O. BOX 710
WESTPORT, CT 06881

RE: Acceptance of Business Filing

This letter is to confirm the acceptance of the following business
filing:

Business Name:
THE BERNARD EDWARDS COMPANY, LLC

Work Order Number: 2000071353-001
Business Filing Number: 0002106679
Type of Request: ARTICLES OF ORGANIZATION
File Date/Time: MAY 04 2000  08:30 AM
Effective Date/Time:
Work Order Payment Received: 85.00
Payment Received: 85.00
Account Balance: .00
Customer Id: 630874
Business Id: 0650746

If applicable for this type of request, a summary of the business
information now on our records for this business is enclosed.

If you would like copies of this filing you must complete a Request for
Corporate Copies and submit it with the appropriate fee.

SUSAN LOGATTO
Commercial Recording Division
860-509-6003

BUSINESS FILING REPORT

WORK ORDER NUMBER:2000071353-001
BUSINESS FILING NUMBER: 0002106679

BUSINESS NAME:

THE BERNARD EDWARDS COMPANY, LLC

BUSINESS LOCATION:

5750 WILSHIRE BLVD.
SUITE 590
LOS ANGELES, CA 90036

** END OF REPORT **

For Internal BMI Use Only
Received

Performing Rights Administration

# BMI

Performing Rights Administration

For Internal BMI Use Only
Entered Via Scope
By: ____
Verified: ____

PLEASE SUPPLY THE FOLLOWING INFORMATION

Date ____

EXACT COMPANY NAME: The Bernard Edwards Company, L.L.C.

If this is a new name, indicate former name ____
**and enclose cashier's check, money order or personal check payable to BMI for $75.00, the administrative fee for processing a change of publishing company name or for a change in ownership.**

BUSINESS ADDRESS: 5750 Wilshire Blvd., Suite 590
(include zip code and name of individual if essential to proper delivery of mail) Los Angeles, CA 90036

BUSINESS PHONE: 323 634-2400
area code

Fax # 323-937-6532 URL Web Site ____

COMPLETE ONE SECTION ONLY
A, B, C OR D

**A. INDIVIDUALLY OWNED:**

Full Name of Individual ____ Soc. Sec. No. ____

Home Address ____

____ Zip Code

**B. PARTNERSHIP:**

Fed. Tax Acct. No. ____
(If not available request form S.S. #4 from IRS)

**List all Partners**

| FULL NAME | HOME ADDRESS | Soc. Sec. No. | Pctg. of Ownership |
|---|---|---|---|
| | Zip Code | | |
| | Zip Code | | |
| | Zip Code | | |

101-7/93/mc

CONTINUED ON REVERSE SIDE

## C. FORMALLY ORGANIZED CORPORATION:

Fed. Tax Acct. No. ______________
(If not available request form S.S. #4 from IRS)

Indicate State in which incorporated ______________

### List all Officers

| FULL NAME | TITLE | HOME ADDRESS |
|---|---|---|
| | | |
| SS # | | Zip Code |
| | | |
| SS # | | Zip Code |
| | | |
| SS # | | Zip Code |

### List all Stockholders

| FULL NAME | HOME ADDRESS | Pctg. of Ownership |
|---|---|---|
| | | |
| SS # | Zip Code | |
| | | |
| SS # | Zip Code | |
| | | |
| SS # | Zip Code | |

## D. FORMALLY ORGANIZED LIMITED LIABILITY COMPANY:

(Complete only if company is now in existence)

List All Members. (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|---|---|---|---|
| SEE ATTACHED | | | |
| | | | |
| | | | |
| | | | |

List Manager(s) Authorized Under Articles of Organization, If Any

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Does he/she have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|
| SAME AS MEMBERS | | | YES |
| | | | |
| | | | |
| | | | |

**If new corporate name is indicated on page 1, check one:**

Old corporation or Limited Liability Company has changed its name [ ] (Copy of Certificate of Change of Name filed with Secretary of State must be attached)

New corporation or Limited Liability Company has been formed [X] (Copy of Certificate of Incorporation or Articles of Organization for LLC's filed with Secretary of State must be attached)

PLEASE SIGN AND RETURN (WITH $75.00 FEE FOR CHANGING PUBLISHING CO. NAME OR CHANGE IN OWNERSHIP)

Signature of owner, partner, or member/manager — TITLE: MANAGER

WALLACE D. FRANSON
(Please print name of person signing)

## BMI Administrative Territories

BMI
Publisher Administration
8730 Sunset Blvd.
3rd Floor West
Los Angeles, CA 90069
310-659-9109

BMI*
Publisher Administration
320 West 57th Street
New York, NY 10019
212-586-2000

*Territory Includes Alaska, Hawaii, Puerto Rico, the U.S. Virgin Islands, American Samoa and Guam

BMI
Publisher Administration
10 Music Square East
Nashville, TN 37203
615-401-2000

BMI
Publisher Administration
84 Harley House
Marylebone Road
London NW1 5HN
01144171 486-2036

BMI

PLEASE RETURN THIS DOCUMENT TO THE BMI OFFICE RESPONSIBLE FOR YOUR STATE
ATTENTION: PUBLISHER ADMINISTRATION

101-7/93/mc

VOL 704 PG 069

DECREE RE: ADMINISTRATION AND DISTRIBUTION (PC-262) REV. 10/98

STATE OF CONNECTICUT
COURT OF PROBATE

Recorded:
Page: 1

Court of Probate, District of Westport
District Number 158

96-000083

Estate of: BERNARD EDWARDS, late of Westport

Date of Administration Account: 12/08/1999

At a Court of Probate held at the place and time of hearing set by the Court together with any continuances thereof, as of record appears, on the fiduciary's application for allowance of the administration account indicated above, ascertainment of heirs and distributees, and an order of distribution.

PRESENT: Hon. KEVIN M. O'GRADY, Judge

After due hearing THE COURT FINDS that:

Notice of hearing was given in accordance with the order of notice previously given.

All succession taxes due to the State of Connecticut have been paid.

The distributees of the rest, residue and remainder of said estate are as set forth in the schedule of proposed distribution in said account.

WHEREFORE, it is ORDERED AND DECREED that:

Said account is allowed and approved.

Any unpaid bequests or legacies shall be paid over to those legally entitled thereto.

The rest, residue and remainder of said estate be distributed, transferred and paid over to and among the distributees or their fiduciaries by the fiduciary of the estate as set forth in the schedule of proposed distribution of said account, and in accordance with the provisions of the Will, and Codicil(s) if any, of said deceased.

It is further ORDERED AND DECREED that said fiduciary make due return of compliance with this Order.

*

Dated at Westport, CT, this 27th day of December, 1999.

*And it is further DECREED that the estate is completed and closed this 31st day of December, 1999.

KEVIN M. O'GRADY, Judge

# ARTICLES OF ORGANIZATION FOR A CONNECTICUT LIMITED LIABILITY COMPANY

NOTE: This form constitutes only the minimum statutory requirements for filing with the Office of the Secretary of the State. Should you wish to include additional information, you may attach a plain sheet of 81/2x11 paper to the document.

1. The name of the limited liability company:

   The Bernard Edwards Company, LLC

2. The nature of business to be transacted or the purpose to be promoted or carried out the limited liability company is as follows:

   The Company's purpose is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

3. Principal office address: (P.O. Box is not acceptable) 5750 Wilshire Blvd., Suite 590, Los Angeles, CA 90036

4. Statutory agent for service of process, P.A. 93-267 §5:
   Name: Richard J. Pober Business Address: 19 Ludlow Road, Westport, CT 06880

   Residence Address: 7 Aspetuck Hill Lane, Weston, Connecticut 06883

5. The latest date upon which the limited liability company will dissolve:

   May 1, 2055

EXECUTION

6. Dated this 31st day of December, 1999

7. Wallace D. Franson, Manager
   Name and capacity of signatory (print or type)

8. [signature]
   Signature

9. Acceptance of appointed statutory agent.

   Richard J. Pober
   Print Name

10. [signature]
    Signature

Rec: CC:

Richard J. Pober, Esquire
19 Ludlow Road
Westport, CT 06880

Please provide filer's name and complete address for mailing receipt

RETURN FORM TO:
Secretary of the State
30 Trinity Street
Hartford, CT 06106

APS LLC CT-18

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
AS TRUSTEE OF THE
BERNARD EDWARDS, JR. TRUST
LEAH EDWARDS TRUST
PORTIA EDWARDS TRUST
MARK EDWARDS TRUST
DAVID EDWARDS TRUST
MICHAEL EDWARDS TRUST

ASSIGNEE: **THE BERNARD EDWARDS COMPANY, LLC**

PORTION ASSIGNED: AN UNDIVIDED FIFTY PERCENT (50%) OF THE COPYRIGHT OWNERSHIP

ONE HUNDRED PERCENT (100%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , AS WELL AS the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor (acting in his capacity as Executor of the Estate of Bernard Edwards, Deceased), Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage

Assignment of Copyright
Wallace D. Franson -to-
The Bernard Edwards Company, LLC
Page Two

applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 2, ~~1999~~ 2000

[signature]
**WALLACE D. FRANSON**
**Trustee**

AGREED AND ACCEPTED:

**THE BERNARD EDWARDS COMPANY, LLC**

By: [signature]

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

ASSIGNEE: **WALLACE D. FRANSON**
**as TRUSTEE OF THE MICHAEL EDWARDS TRUST**

PORTION
ASSIGNED: AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%)
OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%)
OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

WALLACE D. FRANSON
(in his dual capacities)

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

ASSIGNEE: **WALLACE D. FRANSON**
**as TRUSTEE OF THE BERNARD EDWARDS, JR. TRUST**

PORTION
ASSIGNED: AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.33%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.67%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# I WANT YOUR LOVE

CERTIFICATE OF COPYRIGHT REGISTRATION

FORM PA

UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

Barbara Ringer

Register of Copyrights
United States of America

REGISTRATION NUMBER
PAu 58-489
PA PAU

EFFECTIVE DATE OF REGISTRATION
OCTOBER 30 1978
Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**1 Title**

TITLE OF THIS WORK: I WANT YOUR LOVE

NATURE OF THIS WORK: (See instructions) WORDS & MUSIC

PREVIOUS OR ALTERNATIVE TITLES:

**2 Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1\.
NAME OF AUTHOR: BERNARD EDWARDS
Was this author's contribution to the work a "work made for hire"? Yes ... No X
DATES OF BIRTH AND DEATH: Born 1952 (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in (Name of Country)
AUTHOR OF: (Briefly describe nature of this author's contribution) WORDS AND MUSIC
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X; Pseudonymous? Yes No X
If the answer to either of these questions is "Yes," see detailed instructions attached.

2\.
NAME OF AUTHOR: NILE RODGERS
Was this author's contribution to the work a "work made for hire"? Yes No X
DATES OF BIRTH AND DEATH: Born 1952 (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in (Name of Country)
AUTHOR OF: (Briefly describe nature of this author's contribution) WORDS AND MUSIC
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No X; Pseudonymous? Yes No X
If the answer to either of these questions is "Yes," see detailed instructions attached.

3\.
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"? Yes No
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of (Name of Country) or Domiciled in (Name of Country)
AUTHOR OF: (Briefly describe nature of this author's contribution)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No; Pseudonymous? Yes No
If the answer to either of these questions is "Yes," see detailed instructions attached.

**3 Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year 1978
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date (Month) (Day) (Year)
Nation (Name of Country)
(Complete this block ONLY if this work has been published.)

**4 Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
CHIC MUSIC INC.
110 EAST 59th ST.
NY NY 10022

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)
WRITTEN AGREEMENT

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• Follow detailed instructions attached

DO NOT WRITE HERE

| | EXAMINED BY ... | APPLICATION RECEIVED: 70CT3 061978 | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|---|---|
| | CHECKED BY ... | | |
| | CORRESPONDENCE: ☐ Yes | DEPOSIT RECEIVED: OCT 30 1978 | |
| PAu 58-489 | DEPOSIT ACCOUNT FUNDS USED: ☐ | REMITTANCE NUMBER AND DATE: 30778 OCT 30 78 | |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**5 Previous Registration**

PREVIOUS REGISTRATION:

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes ........ No X .....
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☐ This is a changed version of the work, as shown by line 6 of the application.
- If your answer is "Yes," give: Previous Registration Number .................... Year of Registration ....................

**6 Compilation or Derivative Work**

COMPILATION OR DERIVATIVE WORK: (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

.......................................................................

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

.......................................................................

**7 Fee and Correspondence**

DEPOSIT ACCOUNT: (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: ..........................................

Account Number: ..........................................

CORRESPONDENCE: (Give name and address to which correspondence about this application should be sent.)

Name: CHIC MUSIC INC.

Address: 110 EAST 59th ST. (Apt)

NY (City) NY (State) 10022 (ZIP)

**8 Certification (Application must be signed)**

CERTIFICATION: * I, the undersigned, hereby certify that I am the: (Check one)

☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☐ authorized agent of ........ (Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) Bernard Edwards

Typed or printed name ... BERNARD EDWARDS ......... Date ..................

**9 Address For Return of Certificate**

CHIC MUSIC INC. (Name)

110 EAST 59th STREET (Number, Street and Apartment Number)

NEW YORK, (City) NY (State) 10022 (ZIP code)

MAIL CERTIFICATE TO

NOV 24 1978

(Certificate will be mailed in window envelope)

* 17 USC §506(e): FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**

UNITED STATES COPYRIGHT OFFICE

This certificate issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

Barbara Ringer

Register of Copyrights
United States of America

REGISTRATION NUMBER
PA 55-928
PA PAU

EFFECTIVE DATE OF REGISTRATION
Oct 1 1979
Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**1 Title**

TITLE OF THIS WORK: I WANT YOUR LOVE

NATURE OF THIS WORK: (See instructions) words, music, and arrangement

PREVIOUS OR ALTERNATIVE TITLES:

**2 Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1. NAME OF AUTHOR: Bernard Edwards
Was this author's contribution to the work a "work made for hire"? Yes ___ No X
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in USA (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ___ No X; Pseudonymous? Yes ___ No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) words, music, and arrangement

2. NAME OF AUTHOR: Nile Rogers
Was this author's contribution to the work a "work made for hire"? Yes ___ No X
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of USA (Name of Country) or Domiciled in USA (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes ___ No X; Pseudonymous? Yes ___ No X
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution) words, music, and arrangement

3. NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"? Yes ___ No ___
DATES OF BIRTH AND DEATH: Born (Year) Died (Year)
AUTHOR'S NATIONALITY OR DOMICILE: Citizen of (Name of Country) or Domiciled in (Name of Country)
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? Yes No; Pseudonymous? Yes No
If the answer to either of these questions is "Yes," see detailed instructions attached.
AUTHOR OF: (Briefly describe nature of this author's contribution)

**3 Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year 1978
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION: Date November 8, 1978 (Month) (Day) (Year)
Nation USA (Name of Country)
(Complete this block ONLY if this work has been published.)

**4 Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):

COTILLION MUSIC, INC.
75 Rockefeller Plaza
New York, New York 10019

CHIC MUSIC, INC.
110 East 59th Street
New York, New York 10019

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

by contract

- Complete all applicable spaces (numbers 5-9) on the reverse side of this page
- Follow detailed instructions attached
- Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

PA 55-928

EXAMINED BY:
CHECKED BY:
APPLICATION RECEIVED: 01 OCT 1979
CORRESPONDENCE: ☐ Yes
DEPOSIT RECEIVED: 01 OCT 1979 01 OCT 1979
DEPOSIT ACCOUNT FUNDS USED: ☑
REMITTANCE NUMBER AND DATE:

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)

**5 Previous Registration**

**PREVIOUS REGISTRATION:**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes X No
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☒ This is a changed version of the work, as shown by line 6 of the application.
- If your answer is "Yes," give: Previous Registration Number PAu 58-489 Year of Registration 1978

**6 Compilation or Derivative Work**

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

words and music previously registered in unpublished form

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

New Arrangement

**7 Fee and Correspondence**

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: COTILLION MUSIC, INC.

Account Number: DA 12102

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: Linda Wortman
Cotillion Music, Inc.
Address: 75 Rockefeller Plaza (Apt)
New York, New York 10019
(City) (State) (ZIP)

**8 Certification** (Application must be signed)

**CERTIFICATION:** * I, the undersigned, hereby certify that I am the: (Check one)

☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of Cotillion Music, Inc.
(Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: [signature]

Typed or printed name: Linda Wortman Date: 9/26/79

**9 Address For Return of Certificate**

COTILLION MUSIC, INC.
(Name)
75 Rockefeller Plaza
(Number, Street and Apartment Number)
New York, New York 10019
(City) (State) (ZIP code)

MAIL CERTIFICATE TO

FEB 7 1980

(Certificate will be mailed in window envelope)

* 17 U.S.C. §506(e) FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

U.S. GOVERNMENT PRINTING OFFICE: 1977 O - 248-424

Nov. 1977 - 1,360,000

# I WANT YOUR LOVE

Words and Music by
BERNARD EDWARDS and NILE RODGERS



©1978, 1979 COTILLION MUSIC, INC. & CHIC MUSIC, INC.
All Rights Reserved



Ba - by, can't you see, when you look at me,
Well, here I am. And who's to say
I can't kick this feel - in' when it hits. All a - lone in my
bet - ter love you won't find to - day? Just one chance, and I will
bed at night, I grab my pil - low and squeeze it tight. I
show you love like no oth - er; two steps a - bove. On your
think of you and I dream of you all of the time. What am I gon - na do?
lad - der I'll be a peg. I want your lov - in'. Please don't make me beg.

Am7
Em7
Fmaj7
I want your love.
I want your love.
Dm9
Em7
Am7
Em7
Fmaj7
I want your love.
I want your love.
Dm9
Em7
Dm9
Em7
Am7
Em7
Some -
I want your love.
I need your love.
Fmaj7
Dm9
Em7
Am7
Em7
I'll share my dreams
and make you see
how real - ly bad

Fmaj7
Dm9
Em7
Am7
your love I need. I want your love. I need your love, just like the birds
need the sky a - bove. I'll share my dreams and make you see
how real - ly bad your lo... I need.
D.S. 𝄋 and fade

AGREEMENT made on August 14, 2001 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and Sony/ATV Songs LLC, a Delaware Limited Liability Company ("Publisher"), whose address is 8 Music Square West, Nashville, TN 37203.

WITNESSETH:

1. The term of this agreement shall be the period from July 1, 2000 to June 30, 2003, and continuing thereafter for additional periods of three (3) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2. As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3. Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4. Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

**THIS PAGE INTENTIONALLY LEFT BLANK**

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B.  Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C.  Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A.  As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1)  For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2)  For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3)  In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B.  Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6.  In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

B. The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

13.   Publisher warrants and represents that:

A.   Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.   Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A.   Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.   Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.   In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15.   Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A.   It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17. BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (l) and A (2) of this paragraph 17.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (l) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18. In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19. Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20.  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21.  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22.  Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's address. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

23.  This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24.  Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25.  Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26.  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27.  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28.  Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement.  All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

**BROADCAST MUSIC, INC**

By ..........................................................................

[redacted] President

**"PUBLISHER"**

By .......................................... Richard Rowe, President

(Authorized Signatory) (Print Name and Title of Signer)

**If your company structure is a PARTNERSHIP, all other partners must sign below:**

By ..........................................................................
Partner Printed Name

By ..........................................................................
Partner Printed Name

By ..........................................................................
Partner Printed Name

By ..........................................................................
Partner Printed Name

By ..........................................................................
Partner Printed Name

**THIS PAGE INTENTIONALLY LEFT BLANK**

ASSIGNMENT

2 1 2 7 5 6 0 9 7

ASSIGNOR(S): CHIC MUSIC, INC.
c/o Martin Itzler, Esq.
110 East 59th Street
New York, New York 10022

ASSIGNEE(S): COTILLION MUSIC, INC.
75 Rockefeller Plaza
New York, New York 10019

PROPORTION CONVEYED: 35%

For valuable consideration, Assignor hereby assigns, transfers, sets over and conveys to Assignee that proportion of all right, title and interest set forth above in and to the musical composition(s):

| | |
|---|---|
| SAVOIR FAIRE - B. Edwards & N. Rodgers | PAU 58-485 |
| HAPPY MAN - B. Edwards & N. Rodgers | PAU 58-484 |
| (FUNNY) BONE - B. Edwards & N. Rodgers | PAU 58-486 |
| SOMETIMES YOU WIN - B. Edwards & N. Rodgers | PAU 58-487 |
| AT LAST I AM FREE - B. Edwards & N. Rodgers | PAU 58-488 |
| I WANT YOUR LOVE - B. Edwards & N. Rodgers | PAU 58-489 |

including the copyright therein and any renewals or extensions thereof in the United States of America, and all copyrights and proprietary rights therein elsewhere throughout the world, and further including any and all versions of said musical composition(s) and any and all copyrights and renewals and extensions of copyrights in other versions in the United States of America and elsewhere throughout the world, and further including any and all causes of action for infringement of the same, past, present and future, and all of the proceeds from the foregoing accrued and unpaid and hereafter accruing.

IN WITNESS WHEREOF, the undersigned has/(have) executed the foregoing assignment this 7th day of [illegible], 1978.

date - 12/15/78
vol: 1700
pg: 245

by [signature]
CHIC MUSIC, INC.

# ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN THAT COTILLION MUSIC, INC. whose address is 75 Rockefeller Plaza, New York, New York 10019 (hereinafter called "Assignor"); in consideration of the sum of One ($1.00) Dollar paid in hand by CHIC MUSIC, INC. whose address is c/o Martin Itzler, Esq., 110 East 59th Street, New York, New York 10022 (hereinafter called "Assignee") and other good and valuable considerations, receipt of which is hereby acknowledged, hereby assigns to the Assignee all rights and interests in and to the entire copyright of the following musical compositions:

| TITLE | COMPOSER/AUTHOR | COPYRIGHT REGISTRATION NUMBER |
|---|---|---|
| Dance, Dance, Dance (Yowsah, Yowsah, Yowsah) | B. Edwards, N. Rodgers, and K. Lehman | Eu 833038 |
| Sao Paulo | B. Edwards, N. Rodgers, and K. Lehman | Eu 833037 |
| You Can Get By If You Try | B. Edwards and N. Rodgers | Eu 853623 |
| Everybody Dance | B. Edwards and N. Rodgers | Pau 18-178 |
| Est-Ce Que C'est Chic | B. Edwards and N. Rodgers | |
| Falling In Love With You | B. Edwards and N. Rodgers | Eu 853622 |
| Strike Up The Band | B. Edwards, N. Rodgers and K. Lehman | Pau 18-172 |
| Chic Cheer | B. Edwards and N. Rodgers | |
| Le Freak | B. Edwards and N. Rodgers | Pau 61-308 |
| Savoir Faire | B. Edwards and N. Rodgers | Pau 58-485 |
| Happy Man | B. Edwards and N. Rodgers | Pau 58-484 |
| I Want Your Love | B. Edwards and N. Rodgers | Pau 58-489 |
| [illegible] | [illegible]s | Pau 58-488 |
| [illegible] | [illegible]s | Pau 58-487 |
| [illegible] | [illegible]s | Pau 58-486 |

[illegible]s, that may be [illegible] and effect in the [illegible] countries.

[illegible]r hands and seals

[illegible]IC, INC.

Signor

Copyright Office of the United States
THE LIBRARY OF CONGRESS

THIS IS TO CERTIFY THAT THE ATTACHED DOCUMENT WAS RECORDED IN THE COPYRIGHT OFFICE ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

Date of recordation 5Nov79
Volume 1754
Page 162

Barbara Ringer
Register of Copyrights and Assistant Librarian for Copyright Services

ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN THAT COTILLION MUSIC, INC. whose address is 75 Rockefeller Plaza, New York, New York 10019 (hereinafter called "Assignor"); in consideration of the sum of One ($1.00) Dollar paid in hand by CHIC MUSIC, INC. whose address is c/o Martin Itzler, Esq., 110 East 59th Street, New York, New York 10022 (hereinafter called "Assignee") and other good and valuable considerations, receipt of which is hereby acknowledged, hereby assigns to the Assignee all rights and interests in and to the entire copyright of the following musical compositions:

| TITLE | COMPOSER/AUTHOR | COPYRIGHT REGISTRATION NUMBER |
|---|---|---|
| Dance, Dance, Dance (Yowsah, Yowsah, Yowsah) | B. Edwards, N. Rodgers, and K. Lehman | Eu 833038 |
| Sao Paulo | B. Edwards, N. Rodgers, and K. Lehman | Eu 833037 |
| You Can Get By If You Try | B. Edwards and N. Rodgers | Eu 853623 |
| Everybody Dance | B. Edwards and N. Rodgers | Pau 18-178 |
| Est-Ce Que C'est Chic | B. Edwards and N. Rodgers | |
| Falling In Love With You | B. Edwards and N. Rodgers | Eu 853622 |
| Strike Up The Band | B. Edwards, N. Rodgers and K. Lehman | Pau 18-172 |
| Chic Cheer | B. Edwards and N. Rodgers | |
| Le Freak | B. Edwards and N. Rodgers | Pau 61-308 |
| Savoir Faire | B. Edwards and N. Rodgers | Pau 58-485 |
| Happy Man | B. Edwards and N. Rodgers | Pau 58-484 |
| I Want Your Love | B. Edwards and N. Rodgers | Pau 58-489 |
| At Last I Am Free | B. Edwards and N. Rodgers | Pau 58-488 |
| Sometimes You Win | B. Edwards and N. Rodgers | Pau 58-487 |
| (Funny) Bone | B. Edwards and N. Rodgers | Pau 58-486 |

and in all renewals and extensions of said copyrights, that may be secured under the laws now and hereinafter in force and effect in the United States of America or in any other country or countries.

IN WITNESS WHEREOF, we have hereunto set our hands and seals, this 1st day of July, 1979.

COTILLION MUSIC, INC.

By: ______________________
Authorized Signer

This is a list of the compositions of which Chic Music shall receive 100% of the publishers share:

"DANCE DANCE DANCE"
(YOWSAH YOWSAH YOWSAH)

"SAO PAULO"

"YOU CAN GET BY IF YOU TRY"

"EVERYBODY DANCE"

"EST-CE QUE C'EST CHIC"

"FALLING IN LOVE WITH YOU"

"STRIKE UP THE BAND"

"CHIC CHEER"

"LE FREAK"

"SAVOIR FAIRE"

"HAPPY MAN"

"I WANT YOUR LOVE"

"AT LAST I AM FREE"

"SOMETIMES YOU WIN"

"FUNNY BONE"

BERNARD EDWARDS
c/o Manatt, Phelps, Rothenberg, Tunney & Phillips
11355 West Olympic Boulevard
Los Angeles, California 90064
Attention: Peter T. Paterno, Esq.

and

NILE RODGERS
c/o Dennis Katz, P.C.
845 Third Avenue
New York, New York 10022

September 1, 1986

Broadcast Music, Inc.
250 West 57th Street
New York, New York 10019

Re: Chic Music, Inc.

Gentlemen:

Reference is made to the agreement between Chic Music, Inc. and you dated September 14, 1979, as the same may have been amended and extended (the "Agreement"). Pursuant to the assignment agreements dated as of May 15, 1984, attached hereto as Exhibit "A" and incorporated by reference herein (the "Assignment Agreements"), Chic Music, Inc. assigned the copyrights in and to the musical compositions subject to the Agreement to Nile Rodgers ("Rodgers"), his successors or assigns and to Bernard Edwards ("Edwards"), his successors or assigns, in the respective shares set forth in the Assignment Agreements.

It is our understanding that the account of Chic Music, Inc. is presently unrecouped. Fifty percent (50%) of this unrecouped balance should be assigned to each Edwards' and Rodgers' respective BMI affiliates.

Any and all notices pursuant to the Agreement should be sent to each Edwards and Rodgers at their respective addresses set forth hereinabove. Any and all royalties and statements pursuant to the agreement should be sent to each Edwards and Rodgers at the following addresses: Bernard Edwards, c/o Jess S. Morgan & Co., 6420 Wilshire Boulevard, Nineteenth Floor, Los Angeles, California 90048, Attention: Wally Franson; and Nile Rodgers, c/o Zolt & Loomis, 60 East 42nd Street, Suite 1442, New York, New York 10017, Attention: Marvin Zolt.

Very truly yours,

Bernard Edwards

Nile Rodgers

0 0 4 2 0 7 9 3 0 0 3

EXHIBIT A

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned parties hereby agree to amend that certain assignment agreement executed on behalf of Chic Music, Inc., dated May 15, 1984 and attached hereto as Exhibit "E" and incorporated by reference herein (the "Assignment Agreement"). Except as otherwise provided to the contrary herein, all terms used herein shall have the same meaning as in the Assignment Agreement.

1. Notwithstanding anything to the contrary contained in the Assignment Agreement, the first paragraph of the Assignment Agreement is hereby amended, as of the date hereof, to provide as follows:

> "In consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, CHIC MUSIC, INC., a Delaware Corporation with a principal place of business at 33 Pony Trail, Stamford, Connecticut ("ASSIGNOR"), does hereby sell, assign, transfer and set over unto NILE RODGERS, an individual, his successors and assigns ("ASSIGNEE"), c/o Zolt & Loomis, 60 E. 42nd Street, Suite 1442, New York, New York, 10017, Attention: Marvin Zolt, and BERNARD EDWARDS, his successors and assigns ("ASSIGNEE"), c/o Jess S. Morgan & Co., 6420 Wilshire Boulevard, 19th Floor, Los Angeles, California 90048, Attention: Wally Franson, Fifty Percent (50%) to each Assignee, of the copyrights in and to the following musical compositions which have been duly registered for copyright in the United States Copyright Office in the Assignor's names under the dates and identification numbers set forth below, and Fifty Percent (50%) to each Assignee, of the rights, title and interest of the Assignor, vested and contingent, therein and thereto:"

Subject to the foregoing, the terms and provisions of the Assignment Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the Assignor has caused this agreement to be signed in its corporate name and by its duly

authorized officers, and its corporate seal to be hereunto affixed, as of this 15th day of May, 1984.

CHIC MUSIC, INC.

Bernard Edwards

Nile Rodgers

0 0 4 2 0 7 9 3 0 0 5

EXHIBIT "E"

ASSIGNMENT

In consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, CHIC MUSIC, INC., a Delaware Corporation with a principal place of business at 33 Pony Trail, Stamford, Connecticut ("ASSIGNOR"), does hereby sell, assign, transfer and set over unto PLAN-9 MUSIC, INC., a Delaware corporation with its principal place of business at 9 Covlee Drive, Westport, Connecticut, and BERNARD EDWARDS PRODUCTIONS, INC., a Delaware corporation with its principal place of business at 55 Hedgebrook Lane, their successors and assigns ("ASSIGNEES"), Fifty Percent (50%) to each Assignee, of the copyrights in and to the following musical compositions which have been duly registered for copyright in the United States Copyright Office in the Assignor's names under the dates and indentification numbers set forth below, and Fifty Percent (50%) to each Assignee, of the rights, title and interest of the Assignor, vested and contingent, therein and thereto:

| Title | Copyright Identification No. | Effective Date | % Interest |
|---|---|---|---|
| AT LAST I AM FREE | PA 55-929 | 11/8/78 | 100.00 |
| BABY DOLL | PA 383-887 | 12/17/81 | 100.00 |
| BACKFIRED | PA 116-716 | 6/7/81 | 100.00 |
| (FUNNY) BONE | PA 55-931 | 11/8/78 | 100.00 |
| BURN HARD | PA 140-448 | 11/23/81 | 100.00 |
| CAN'T STAND TO LOVE YOU | PA 108-234 | 8/2/79 | 100.00 |
| CHARGE PLATES AND CREDIT CARDS | PA 77-178 | 5/13/80 | 100.00 |
| CHIC CHEER | PA 55-924 | 11/8/78 | 100.00 |
| CHIC (EVERYBODY SAY) | PA 158-664 | 10/12/82 | 100.00 |
| CHIP OFF THE OLD BLOCK | PA 77-171 | 6/30/80 | 100.00 |
| CITY LIGHTS | PA 155-409 | 11/5/82 | 100.00 |
| COULD YOU BE MY BABY aka WOULD YOU BE MY BABY | PA 140-442 | 11/23/81 | 100.00 |
| COVER GIRLS | PA 77-179 | 5/13/80 | 100.00 |
| DANCE, DANCE, DANCE | EU 833038 | 10/13/77 | 66.66 |
| DON'T GO | PA 59-000 | 10/19/79 | 100.00 |
| DON'T THROW MY LOVE AWAY | PAU [illegible]4-119 | 4/28/81 | 100.00 |
| DREAMGIRL | PA 149-577 | 5/3/82 | 100.00 |
| EASIER TO LOVE | PA 106-659 | 1/31/79 | 100.00 |

C 0 4 2 0 3 3 0 0 7

CHIC MUSIC, INC.

| Title | Copyright Identification No. | Effective Date | % Interest |
|---|---|---|---|
| I'M COMING OUT | PA 75-954 | 5/22/80 | 100.00 |
| IT'S ALRIGHT (TO LOVE ME) | PAU 422-743 | 7/16/82 | 100.00 |
| I WANT TO FALL IN LOVE | PAU 422-743 | 7/16/82 | 100.00 |
| I WANT YOUR LOVE | PA 55-928 | 11/8/78 | 100.00 |
| I WORK FOR A LIVING | PA 149-576 | 5/3/82 | 100.00 |
| THE JAM WAS MOVING | PA 123-193 | 8/14/81 | 100.00 |
| JUDY | PAU 422-745 | 7/16/82 | 100.00 |
| JUST OUT OF REACH | PAU 140-440 | 12/17/81 | 100.00 |
| KING OF THE WORLD | PA 77-178 | 5/13/80 | 100.00 |
| LET'S GO ON VACATION | PA 68-242 | 2/11/80 | 100.00 |
| LOST IN MUSIC | PA 68-242 | 2/11/80 | 100.00 |
| LOVE AND BE LOVED | PAU 422-745 | 7/16/82 | 100.00 |
| MAYDAY | PA 77-175 | 5/13/80 | 100.00 |
| MISERY | PA 77-177 | 5/13/80 | 100.00 |
| MY FEET KEEP DANCING | PA 108-236 | 8/2/79 | 100.00 |
| MY FORBIDDEN LOVER | PA 108-235 | 8/2/79 | 100.00 |
| MY OLD PIANO | PA 75-958 | 5/22/80 | 100.00 |
| NOW I KNOW YOU KNOW | PA 123-195 | 8/14/81 | 100.00 |
| NOW THAT YOU'RE GONE | PA 75-959 | 5/22/80 | 100.00 |
| OASIS | PA 123-197 | 8/14/81 | 50.00 |
| ONE MORE TIME | PA 106-657 | 1/31/79 | 100.00 |
| OPEN UP | PA 79-805 | 6/13/80 | 100.00 |
| PRETTY BABY | PA 68-240 | 2/11/80 | 100.00 |
| RAPPERS' DELIGHT | PA 108-303 | 6/27/79 | 100.00 |
| REACH YOUR PEAK | PA 68-239 | 2/11/80 | 100.00 |
| REAL PEOPLE | PA 77-169 | 6/30/80 | 100.00 |
| REBELS ARE WE | PA 79-806 | 6/13/80 | 100.00 |
| RIDING | PA 304-125 | 4/23/81 | 100.00 |
| SAO PAULO | PA 110-216 | 1/1/78 | 66.66 |
| SATURDAY | PAU 34-825 | 7/26/78 | 100.00 |
| SAVOIR FAIRE | PA 126-732 | 11/8/78 | 100.00 |
| SHARING LOVE | PA 155-408 | 11/5/82 | 100.00 |

0 0 4 2 0 7 9 3 0 0 9

| Title | Copyright Identification No. | Effective Date | % Interest |
|---|---|---|---|
| YOU CAN'T DO IT ALONE | PA 77-170 | 6/30/80 | 100.00 |
| YOU FOOLED AROUND | PA 68-237 | 2/11/80 | 100.00 |
| YOU'RE A FRIEND TO ME | PA 106-658 | 1/31/79 | 100.00 |
| YOUR LOVE IS CANCELLED | PA 140-442 | 11/23/81 | 100.00 |
| YOUR LOVE IS GOOD | PA 77-178 | 5/13/80 | 100.00 |

IN WITNESS WHEREOF, the Assignor has caused this Assignment to be signed in its corporate name and by its duly authorized officers, and its corporate seals to be hereunto affixed, this 15th day of May , 1984.

CHIC MUSIC INC.

By: Bernard Edwards
BERNARD EDWARDS

NILE RODGERS

VOL 22

## ASSIGNMENT

ASSIGNOR(S): NILE RODGERS

ASSIGNEE(S): TOMMY JYMI, INC.

PORTION CONVEYED: ALL OF HIS UNDIVIDED 50% INTEREST

For valuable consideration, ASSIGNOR hereby assigns, transfers, sets over and conveys to ASSIGNEE that portion of all right, title and interest set forth above in and to the following musical composition(s):

See Schedule "A"

including the copyrights and proprietary rights therein and in any and all versions of said musical composition(s), and any renewals and extensions thereof (whether presently available or subsequently available as the result of intervening legislation) in the United States of America and elsewhere throughout the world, and further including any and all causes of action for infringement of the same, past, present and future, and all proceeds from the foregoing accrued and unpaid and hereafter accruing.

IN WITNESS WHEREOF, the undersigned has (have) executed the foregoing Assignment as of this 1st day of June, 1986.

NILE RODGERS

Doc. 0392C

SCHEDULE "A"

| | COPYRIGHT NUMBER & DATE | EFFECTIVE DATE | % INTEREST |
|---|---|---|---|
| AT LAST I AM FREE | Pa 55-929 | 11/8/78 | 50.00 |
| BABY DOLL | Pa 383-887 | 12/17/81 | 50.00 |
| BACKFIRED | Pa 116-716 | 6/7/81 | 50.00 |
| (FUNNY) BONE | Pa 55-931 | 11/8/78 | 50.00 |
| BURN HARD | Pa 140-448 | 11/23/81 | 50.00 |
| CAN'T STAND TO LOVE YOU | Pa 108-234 | 8/2/79 | 50.00 |
| CHARGE PLATES AND CREDIT CARDS | Pa 77-178 | 5/13/80 | 50.00 |
| CHIC CHEER | Pa 55-924 | 11/8/78 | 50.00 |
| CHIC (EVERYBODY SAY) | Pa 1[illegible] 664 | 10/12/82 | 50.00 |
| CHIP OFF THE OLD BLOCK | Pa 77-171 | 6/30/80 | 50.00 |
| CITY LIGHTS | Pa 155-409 | 11/5/82 | 50.00 |
| COULD YOU BE MY BABY aka WOULD YOU BE MY BABY | Pa 140-442 | 11/23/81 | 50.00 |
| COVER GIRLS | Pa 77-179 | 5/13/80 | 50.00 |
| DANCE, DANCE, DANCE | Eu 833038 | 10/13/77 | 50.00 |
| DON'T GO | Pa 59-000 | 10/19/79 | 50.00 |
| DON'T THROW MY LOVE AWAY | Pau 304-119 | 4/28/81 | 50.00 |
| DREAMGIRL | Pa 149-577 | 5/3/82 | 50.00 |
| EASIER TO LOVE | Pa 106-659 | 1/31/79 | 50.00 |

Doc. 0392C

SCHEDULE "A"

| | COPYRIGHT NUMBER & DATE | EFFECTIVE DATE | % INTEREST |
|---|---|---|---|
| HOLD IT | Pau 304-121 | 4/28/81 | 50.00 |
| HOLD ME LONELY BOY | Pa 59-102 | 10/3/79 | 50.00 |
| HOW TO LOVE | Pa 68-238 | 2/11/80 | 50.00 |
| I'M A GOOD GIRL aka GOOD GIRL NOW | Pau 155-956 | 1/30/80 | 50.00 |
| I BELIEVE IN YOU | Pa 5-781 | 5/1/78 | 25.00 |
| I CAN LOVE | Pau 304-122 | 4/28/81 | 50.00 |
| I FEEL YOUR LOVE COMIN' | Pa 155-405 | 11/5/82 | 50.00 |
| I LIKE LOVE | Pau 34-824 | 7/26/78 | 50.00 |
| I GOT PROTECTION | Pa 77-172 | 6/30/80 | 50.00 |
| I'LL CHANGE MY GAME | Pau 304-123 | 4/28/81 | 50.00 |
| I LOVE MY LADY | Pau 422-743 | 7/16/82 | 50.00 |
| I LOVE YOU MORE | Pa 77-173 | 6/30/80 | 50.00 |
| ✓ I'M COMING OUT | Pa 75-954 | 5/22/80 | 50.00 |
| IT'S ALRIGHT (TO LOVE ME) | Pau 422-743 | 7/16/82 | 50.00 |
| I WANT TO FALL IN LOVE | Pau 794-711 | 12/23/85 | 50.00 |
| I WANT YOUR LOVE | Pa 55-928 | 11/8/78 | 50.00 |
| I WORK FOR A LIVING | Pa 149-576 | 5/3/82 | 50.00 |
| THE JAM WAS MOVING | Pa 123-193 | 8/14/81 | 50.00 |

ASSIGNMENT

EXHIBIT A-1

to an agreement between TOMMY JYMI, INC. (BMI) and PLAN NINE MUSIC, INC. (ASCAP), on the one hand, and SONY SONGS INC. (BMI) and SONY TUNES INC. (ASCAP), on the other, dated January 3, 1995 (SMP 94-71).

---

(Reference - Subparagraph 1.01(a))

KNOW ALL MEN BY THESE PRESENTS:

The undersigned:

Name: NILE RODGERS

Address: c/o Dennis Katz, Esq., 845 Third Avenue, Suite 1400, New York, New York 10022
("Assignor")

for good and valuable consideration now received, hereby sells and assigns unto:

Name: TOMMY JYMI, INC. (BMI)

Address: c/o Dennis Katz, Esq., 845 Third Avenue, Suite 1400, New York, New York 10022
("First Assignee"),

and its successors and assigns forever, one hundred percent (100%) of Assignor(s)' interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of the undersigned Assignor(s) in and to, all musical compositions Assignor owns, in whole or part, including without limitation, the musical composition(s) listed on Schedule A annexed (all such compositions hereinafter collectively the "Compositions"), throughout the world, which First Assignee, in turn, for good and valuable consideration now received, hereby sells and assigns unto:

Name: SONY SONGS INC. (BMI)

Address: 550 Madison Avenue, New York, New York 10022-3211
("Second Assignee")

ldc

and its successors and assigns forever, an undivided one hundred percent (100%) of Assignor(s)' interest in the copyright(s) (including renewals, if applicable) in and to, and all of the right, title and interest of Assignor(s) in and to, the Composition(s), throughout the world.

THIS INSTRUMENT is subject to all of the terms and conditions of the agreement dated January 3, 1995 between First Assignee and Second Assignee.

DATED: January 3, 1995

NILE RODGERS

TOMMY JYMI, INC.

By____________________

ACKNOWLEDGEMENTS

STATE OF NEW YORK )
) ss
COUNTY OF NEW YORK )

On DECEMBER 22, 1994, before me personally came Nile Rodgers, known to me to be the individual described in and who executed the foregoing instrument, and acknowledged to me that he executed it.

Notary Public, State of New York
No. 31-7776300
Qualified in New York County
Commission Expires October 31, 1996

STATE OF NEW YORK )
)
COUNTY OF NEW YORK )

On DECEMBER 22, 1994, before me personally came NILE RODGERS, known to me, who, duly sworn by me, did depose and say that he resides at [illegible], NY, NY, that he is the PRESIDENT of TOMMY JYMI, INC., the corporation described in and which executed the foregoing instrument, and that he signed it by order of the Board of Directors of the corporation.

Notary Public, State of New York
No. 31-[illegible]
Qualified in New York County
Commission Expires October [illegible] 1996

**SCHEDULE A**

to an agreement between TOMMY JYMI, INC. (BMI) and PLAN NINE MUSIC, INC. (ASCAP), on the one hand, and SONY SONGS INC. (BMI) and SONY TUNES INC. (ASCAP), on the other, dated January 3, 1995 (SMP 94-71).

(Reference Subparagraph 1.01(a))

**Compositions**

| Title | Writer(s) | Publisher Splits | U.S. Copyright Registration No./Date |
|---|---|---|---|
| AT LAST I AM FREE | NILE RODGERS | | |
| BABY DOLL | NILE RODGERS | | |
| BACKFIRED | NILE RODGERS | | |
| X BELIEVER | NILE RODGERS | | |
| BURN HARD | NILE RODGERS | | |
| CAN'T STAND TO LOVE YOU | NILE RODGERS | | |
| CHARGE PLATES & CREDIT CARDS | NILE RODGERS | | |
| CHIC (EVERYBODY SAY) | NILE RODGERS | | |
| CHIC CHEER | NILE RODGERS | | |
| CHICISM | NILE RODGERS | | |
| CHIC MYSTIQUE | NILE RODGERS | | |
| CHIC MYSTIQUE (REPRISE) | NILE RODGERS | | |
| CHIP OFF THE OLD BLOCK | NILE RODGERS | | |
| CITY LIGHTS | NILE RODGERS | | |
| COVER GIRLS | NILE RODGERS | | |
| DANCE DANCE DANCE (YOWSAH Y) | NILE RODGERS | | |
| DANCE DANCE DANCE | NILE RODGERS | | |
| DANCE DANCE DANCE | NILE RODGERS | | |
| DOIN' THAT THING TO ME | NILE RODGERS | | |
| DON'T GO | NILE RODGERS | | |
| DREAMGIRL | NILE RODGERS | | |
| EASIER TO LOVE | NILE RODGERS | | |
| EASY STREET | NILE RODGERS | | |
| EST CE QUE CEST | NILE RODGERS | | |
| EVERYBODY DANCE | NILE RODGERS | | |
| EVERYTHING'S GONNA BE ALRIGHT | NILE RODGERS | | |
| FALLING IN LOVE WITH YOU | NILE RODGERS | | |
| FLASHBACK | NILE RODGERS | | |

| | |
|---|---|
| FRIEND TO FRIEND | NILE RODGERS |
| FUNNY BONE | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (REMIX) | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (@ 12.307) | NILE RODGERS |
| GIRL, DON'T BE NO FOOL (@ 40.00) | NILE RODGERS |
| X GIVE IT UP | NILE RODGERS |
| X GIVE ME THE LOVIN' | NILE RODGERS |
| X GO GO DANCER (REMIX) | NILE RODGERS |
| GOOD TIMES | NILE RODGERS |
| GOT TO LOVE SOMEBODY | NILE RODGERS |
| HANGIN' | NILE RODGERS |
| HAPPY MAN | NILE RODGERS |
| HAVE FUN (AGAIN) | NILE RODGERS |
| HE'S THE GREATEST DANCER | NILE RODGERS |
| HEY FOOL | NILE RODGERS |
| HIGH | NILE RODGERS |
| HIGH SOCIETY | NILE RODGERS |
| HOLD IT | NILE RODGERS |
| HOLD ME LONELY BOY | NILE RODGERS |
| HOW TO LOVE | NILE RODGERS |
| X I'M A GOOD GIRL NOW | NILE RODGERS |
| I'M COMING OUT | NILE RODGERS |
| I BELIEVE IN YOU | NILE RODGERS |
| I FEEL YOUR LOVE COMIN ON | NILE RODGERS |
| I GOT IT | NILE RODGERS |
| I GOT PROTECTION | NILE RODGERS |
| I LIKE LOVE | NILE RODGERS |
| I LOVED YOU MORE | NILE RODGERS |
| IN IT TO WIN IT | NILE RODGERS |
| IN LOVE WITH MUSIC | NILE RODGERS |
| THE INTRODUCTION | NILE RODGERS |
| IT'S ALRIGHT (TO LOVE ME) | NILE RODGERS |
| I WANT YOU LOVE | NILE RODGERS |
| I WANT TO FALL IN LOVE | NILE RODGERS |
| JAM WAS MOVING | NILE RODGERS |
| JUDY | NILE RODGERS |
| JUSAGROOVE | NILE RODGERS |
| JUST OUT OF REACH | NILE RODGERS |
| KING OF THE WORLD | NILE RODGERS |
| KISSING WITH CONFIDENCE | NILE RODGERS |
| LE FREAK | NILE RODGERS |
| LET'S GO ON VACATION | NILE RODGERS |
| LOST IN MUSIC | NILE RODGERS |
| M.M.F.T.C.F. | NILE RODGERS |

NCS [illegible]

SONY SONGS INC.
EPIC/SOLAR INC.
SONY LATIN MUSIC PUBLISHING, INC.
550 Madison Avenue
New York, NY 10022

November 1, 1995

BMI
320 West 57th Street
New York, NY 10019

Re: **Sony Songs Inc., Epic/Solar Inc. and Sony Latin Music Publishing Inc.**

Gentlemen:

The undersigned have this date sold and assigned all of the musical compositions in the above identified catalogs to Sony/ATV Songs LLC. Please change your records accordingly. All of the catalogs should be maintained in separate special accounts for all purposes, including awards and accountings. All accountings should be sent to Sony/ATV Music Publishing LLC, 8 Music Square West, Nashville, TN 37202 Attn: Director of Publishing Administration. All notices and other communications should be sent to Sony/ATV Music Publishing LLC, 550 Madison Avenue, New York, NY 10022 Attn: Vice President of Business Affairs and Administration.

Very truly yours,

SONY SONGS INC.

By:____________________

EPIC/SOLAR INC.

By:____________________

SONY LATIN MUSIC PUBLISHING INC.

By:____________________





RECEIVED
MAY 22 2000
WRITER/PUBLISHER ADMINISTRATION

PHA
101-W9F

**Legal & Business Affairs, Performing Rights**

*BMI INTEROFFICE MEMORANDUM*

**TO:** *Louise O'Sullivan* cc: Gary Cannizzo

(Complete File for microfilming)

**FROM:** *Gary F. Roth*

**DATE:** *May 17, 2000*

**RE:** *Bernard Edwards, Deceased (Current Affiliation: ASCAP) (Schedule D), # 101315* ...Bernard Edwards (Estate) X3229
*Bernard's Other Music, # 26748*

Attached is a letter agreement dated February 29, 2000, with publisher basic agreement (Exhibit "A") which cancels and supersedes the prior agreement with Bernard's Other Music

**Agreement With**: The Bernard Edwards Company, L.L.C., Wallace D. Franson, Executor of the Estate of Bernard Edwards and as Trustee of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust

**Date of Basic Agreement**: February 28, 2000

**Period of Basic Agreement:** July 1, 1999, to June 30, 2004, with automatic five-year renewals unless canceled.

All works cleared under the prior basic agreement is covered by the new basic.

**Royalties**: There are no withheld royalties on either the writer account of Bernard Edwards or the publisher account of Bernard's Other Music. All future royalties are to be made payable and mailed as follows:

The Bernard Edwards Co., L.L.C.
5750 Wilshire Blvd., Suite 590
Los Angeles, CA 90036

ENTERED ON DATA BASE
Info passed — e cc fs - Cannizzo
BY ____ 6/2/2000
(GW) Deleted Cart Type "A"
VERIFIED 6/5/2000

**Statements and Correspondence**: Sent to the same address

**Federal Tax ID Number**: 95-4765394

**Documents Attached for Microfilming**:

1. Letter Agreement with Exhibit "A"
2. W-9 IRS Form for The Bernard Edwards Co., L.L.C.
3. 101 Form for The Bernard Edwards Co., L.L.C.
4. Attachment for 101 listing members, percent of ownership and Tax ID Numbers
5. Articles of Organization for a Connecticut Limited Liability Company
6. Decree RE: Administration and Distribution
7. Assignment of Copyright by the Michael Edwards Trust
8. Assignment of Copyright by the David Edwards Trust
9. Assignment of Copyright by the Mark Edwards Trust
10. Assignment of Copyright by the Portia Edwards Trust
11. Assignment of Copyright by the Leah Edwards Trust
12. Assignment of Copyright by the Bernard Edwards, Jr. Trust
13. Assignment of Copyright by the The Bernard Edwards Company, L.L.C.

GR:wj

cc: J. Ruiz



February 29, 2000

Wallace D. Franson, Trustee
c/o Jess S. Morgan & Company, Inc.
5750 Wilshire Blvd, Ste. 590
Los Angeles, CA  90036-3697

RE: Estate of Bernard Edwards

Dear Mr. Franson:

This will confirm our understanding as follows:

We are entering into the publisher agreement annexed hereto as Exhibit "A" (herein called the "basic agreement") in reliance upon the following warranties and representations:

1.     You warrant and represent:

(a)     that Bernard Edwards, hereinafter called the "decedent", died testate and a resident of the State of Connecticut on April 18, 1996; and

(b)     that you were appointed Executor of the Estate of Bernard Edwards by the Westport Probate Court, Connecticut, on June 3, 1996; and

(c)     that pursuant to Assignments dated January 1, 2000, from you as Executor of the Estate of Bernard Edwards, the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust were each assigned an 8.33% Copyright interest and an 16.67% Administration Rights interest in and to all of the works written by Bernard Edwards and published by Bernard's Other Music; and

(d)     that you as Trustee of each of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust have assigned to the Bernard Edwards Company, LLC (the "Company") all of the rights held by said Trusts with respect to the works written and published by the decedent, and that during the term of the basic agreement, the Company will own and control all of

the rights granted to BMI pursuant to the basic agreement with respect to all works published by the decedent which are embraced by the basic agreement as well as all works formerly embraced by the agreement between the decedent and BMI dated April 10, 1981, which BMI has continued to license for the decedent as a writer; and

(e) that the Estate of Bernard Edwards is now closed; and

(f) that notwithstanding any representations decedent may have made to BMI during his lifetime, you have not purported to grant or assign to any other performing rights organization the right to license performances of the works embraced by the basic agreement or by the agreement between the decedent and BMI dated April 10, 1981; and that BMI has the right to license the writer share in all of the works written by Bernard Edwards through June 30, 1983, and the publisher share on all of the works of Bernard's Other Music; and

(g) that all debts, taxes, and expenses of any kind which are due, or might become due, on behalf of the decedent or his estate have been paid.

2. The basic agreement shall be deemed to contain the following additions and modifications:

(a) The date of the basic agreement shall be deemed to be February 28, 2000.

(i) In Paragraph numbered FIRST: the word "period" shall mean the term from July 1, 1999, to June 30, 2004, and continuing thereafter for additional terms of five (5) years each unless terminated by either party by the end of said initial term or any additional term upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

3. The basic agreement, as of its effective date, shall cancel and supersede the agreement between the decedent doing business as Bernard's Other Music and BMI dated January 19, 1981, and all modifications thereof. All works embraced by said agreement shall be deemed included in the basic agreement.

4. In reliance upon the warranties and representations contained above, BMI agrees to pay The Bernard Edwards Company, LLC, any royalties that have been withheld and which may hereafter become due on behalf of the decedent doing business as Bernard's Other Music under the basic agreement, as well as any royalties which

become payable for performances of the works of Bernard Edwards as a writer with respect to his works existing as of June 30, 1983.

6. In consideration of the foregoing, you all agree, jointly and severally, to indemnify, save and hold BMI free and harmless from and against any and all claims, actions, demands, recoveries and judgments of any and all creditors, heirs, assignees or successors of the decedent in connection with aforesaid agreements dated January 19, 1981, and April 10, 1981, and any modifications thereof or any payments to The Bernard Edwards Company, LLC by BMI under said agreements and the basic agreement by virtue of your warranties and representations contained herein.

Very truly yours,

ACCEPTED AND AGREED TO:

THE BERNARD EDWARDS COMPANY, L.L.C.

By: ______________________
~~President~~ Manager

95-4765394
______________________
Federal Tax ID Number of The Bernard Edwards Company, L.L.C

______________________
Wallace D. Franson, as Executor of the Estate of Bernard Edwards and as Trustee of the Michael Edwards Trust, the David Edwards Trust, the Mark Edwards Trust, the Portia Edwards Trust, the Leah Edwards Trust, and the Bernard Edwards, Jr. Trust

BROADCAST MUSIC, INC.

By: ______________________
Gary F. Roth
Assistant Vice President

Exhibit "A"

BMI

AGREEMENT made on .............................................................. between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and ..............................................
...............................................................................................................................
a ............................................................................. doing business as ...........................................................................
............................................ ("Publisher"), whose address is ...........................................................................
...............................................................................................................................

WITNESSETH:

FIRST: The term of this agreement shall be the period from ...............................................................................
to ......................................................................., and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period.

SECOND: As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

FOURTH: Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher of all the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D(2) of this paragraph TENTH.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH: BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH: Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH: All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH: Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST: This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND: In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By..............................................................................
Vice President

..............................................................................

By..............................................................................

(Title of Signer)....................................

Form **W-9** (Rev. March 1994) Department of the Treasury Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

**Give form to the requester. Do NOT send to the IRS.**

Please print or type

Name (If joint names, list first and circle the name of the person or entity whose number you enter in Part I below. See instructions on page 2 if your name has changed.)
The Bernard Edwards Co., L.L.C.

Business name (Sole proprietors see instructions on page 2.)

Please check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☒ Other ► Ltd. Liability Corp.

Address (number, street, and apt. or suite no.)
5750 Wilshire Blvd., Suite 590

Requester's name and address (optional)

City, state, and ZIP code
Los Angeles, CA 90036

**Part I Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). For sole proprietors, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How To Get a TIN** below.

**Note:** *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number

OR

Employer identification number
95-4765394

List account number(s) here (optional)

**Part II For Payees Exempt From Backup Withholding (See Part II Instructions on page 2)**

►

**Part III Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

**Certification Instructions.**—You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, the acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (Also see Part III instructions on page 2.)

**Sign Here** Signature ► [signature] Wallace D. Franson, Trustee Date ► 4/20/[illegible]

*Section references are to the Internal Revenue Code.*

**Purpose of Form.**—A person who is required to file an information return with the IRS must get your correct TIN to report income paid to you, real estate transactions, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA. Use Form W-9 to give your correct TIN to the requester (the person requesting your TIN) and, when applicable, (1) to certify the TIN you are giving is correct (or you are waiting for a number to be issued), (2) to certify you are not subject to backup withholding, or (3) to claim exemption from backup withholding if you are an exempt payee. Giving your correct TIN and making the appropriate certifications will prevent certain payments from being subject to backup withholding.

**Note:** *If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What Is Backup Withholding?**—Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that could be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, your payments will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS tells the requester that you furnished an incorrect TIN, or

3. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN. See the Part III instructions for exceptions.

Certain payees and payments are exempt from backup withholding and information reporting. See the Part II instructions and the separate **Instructions for the Requester of Form W-9.**

**How To Get a TIN.**—If you do not have a TIN, apply for one immediately. To apply, get **Form SS-5,** Application for a Social Security Number Card (for individuals), from your local office of the Social Security Administration, or **Form SS-4,** Application for Employer Identification Number (for businesses and all other entities), from your local IRS office.

If you do not have a TIN, write "Applied For" in the space for the TIN in Part I, sign and date the form, and give it to the requester. Generally, you will then have 60 days to get a TIN and give it to the requester. If the requester does not receive your TIN within 60 days, backup withholding, if applicable, will begin and continue until you furnish your TIN.

| TIN | OWNERSHIP | MEMBERS: |
|---|---|---|
| 95-7050894 | 1/6 | Wallace D. Franson, Trustee of the Bernard Edwards, Jr. Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050893 | 1/6 | Wallace D. Franson, Trustee of the Mark Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050892 | 1/6 | Wallace D. Franson, Trustee of the David Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050891 | 1/6 | Wallace D. Franson, Trustee of the Portia Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050895 | 1/6 | Wallace D. Franson, Trustee of the Michael Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |
| 95-7050890 | 1/6 | Wallace D. Franson, Trustee of the Leah Edwards Trust<br>5750 Wilshire Blvd.<br>Suite 590<br>Los Angeles, CA 90036 |



SECRETARY OF THE STATE
30 TRINITY STREET
P.O. BOX 150470
HARTFORD, CT 06115-0470

MAY 4,2000

Jess S. Morgan & Company
MAY - 8 2000
RM

IRCHARD J. POBER
P.O. BOX 710
WESTPORT, CT 06881

RE: Acceptance of Business Filing

This letter is to confirm the acceptance of the following business filing:

Business Name:
THE BERNARD EDWARDS COMPANY, LLC

Work Order Number: 2000071353-001
Business Filing Number: 0002106679
Type of Request: ARTICLES OF ORGANIZATION
File Date/Time: MAY 04 2000 08:30 AM
Effective Date/Time:
Work Order Payment Received: 85.00
Payment Received: 85.00
Account Balance: .00
Customer Id: 630874
Business Id: 0650746

If applicable for this type of request, a summary of the business information now on our records for this business is enclosed.

If you would like copies of this filing you must complete a Request for Corporate Copies and submit it with the appropriate fee.

SUSAN LOGATTO
Commercial Recording Division
860-509-6003

BUSINESS FILING REPORT

WORK ORDER NUMBER:2000071353-001
BUSINESS FILING NUMBER: 0002106679

BUSINESS NAME:

THE BERNARD EDWARDS COMPANY, LLC

BUSINESS LOCATION:

5750 WILSHIRE BLVD.
SUITE 590
LOS ANGELES, CA 90036

** END OF REPORT **

For Internal BMI Use Only

Received

Performing Rights Administration

# BMI

Performing Rights Administration

For Internal BMI Use Only

Entered Via Scope

By: ______________

Verified: ______________

**PLEASE SUPPLY THE FOLLOWING INFORMATION**

Date ______________

**EXACT COMPANY NAME:** The Bernard Edwards Company, L.L.C.

**If this is a new name, indicate former name ______________**
**and enclose cashier's check, money order or personal check payable to BMI for $75.00, the administrative fee for processing a change of publishing company name or for a change in ownership.**

**BUSINESS ADDRESS:** 5750 Wilshire Blvd., Suite 590
Los Angeles, CA 90036
(include zip code and name of individual if essential to proper delivery of mail)

**BUSINESS PHONE:** 323 634-2400
area code

Fax # 323-937-6532 URL Web Site ______________

**COMPLETE ONE SECTION ONLY**
**A, B, C OR D**

## A. INDIVIDUALLY OWNED:

Full Name of Individual ______________ Soc. Sec. No. ______________

Home Address ______________

______________ Zip Code

## B. PARTNERSHIP:

**Fed. Tax Acct. No.** ______________
(If not available request form S.S. #4 from IRS)

**List all Partners**

| FULL NAME | HOME ADDRESS | Soc. Sec. No. | Pctg. of Ownership |
|---|---|---|---|
| | Zip Code | | |
| | Zip Code | | |
| | Zip Code | | |

101-7/93/mc

CONTINUED ON REVERSE SIDE

## C. FORMALLY ORGANIZED CORPORATION:

Fed. Tax Acct. No. ______________________
(If not available request form S.S. #4 from IRS)

Indicate State in which incorporated ______________________

### List all Officers

| FULL NAME | TITLE | HOME ADDRESS |
|---|---|---|
| | | |
| SS # | | Zip Code |
| | | |
| SS # | | Zip Code |
| | | |
| SS # | | Zip Code |

### List all Stockholders

| FULL NAME | HOME ADDRESS | Pctg. of Ownership |
|---|---|---|
| | | |
| SS # | Zip Code | |
| | | |
| SS # | Zip Code | |
| | | |
| SS # | Zip Code | |

## D. FORMALLY ORGANIZED LIMITED LIABILITY COMPANY:

(Complete only if company is now in existence)

List All Members. (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|---|---|---|---|
| SEE ATTACHED | | | |
| | | | |
| | | | |
| | | | |

List Manager(s) Authorized Under Articles of Organization. If Any

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Does he/she have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|
| SAME AS MEMBERS | | | YES |
| | | | |
| | | | |
| | | | |

**If new corporate name is indicated on page 1, check one:**

Old corporation or Limited Liability Company has changed its name ☐ **(Copy of Certificate of Change of Name filed with Secretary of State must be attached)**

New corporation or Limited Liability Company has been formed [X] **(Copy of Certificate of Incorporation or Articles of Organization for LLC's filed with Secretary of State must be attached)**

**PLEASE SIGN AND RETURN (WITH $75.00 FEE FOR CHANGING PUBLISHING CO. NAME OR CHANGE IN OWNERSHIP)**

[signature] MANAGER

Signature of owner, partner, or member/manager TITLE

WALLACE D. FRANSON

(Please print name of person signing)

## BMI Administrative Territories

BMI
Publisher Administration
8730 Sunset Blvd.
3rd Floor West
Los Angeles, CA 90069
310-659-9109

BMI*
Publisher Administration
320 West 57th Street
New York, NY 10019
212-586-2000

*Territory includes Alaska, Hawaii, Puerto Rico, the U.S. Virgin Islands, American Samoa and Guam

BMI
Publisher Administration
10 Music Square East
Nashville, TN 37203
615-401-2000

BMI
Publisher Administration
84 Harley House
Marylebone Road
London NW1 5HN
01144171 486-2036

**PLEASE RETURN THIS DOCUMENT TO THE BMI OFFICE RESPONSIBLE FOR YOUR STATE**
**ATTENTION: PUBLISHER ADMINISTRATION**

101-7/93/mc

VOL 704 PG 069

DECREE RE: ADMINISTRATION AND DISTRIBUTION (PC-262) REV. 10/98

STATE OF CONNECTICUT
COURT OF PROBATE

Recorded:
Page: 1

Court of Probate, District of Westport
District Number 158

96-000083

Estate of: BERNARD EDWARDS, late of Westport

Date of Administration Account: 12/08/1999

At a Court of Probate held at the place and time of hearing set by the Court together with any continuances thereof, as of record appears, on the fiduciary's application for allowance of the administration account indicated above, ascertainment of heirs and distributees, and an order of distribution.

PRESENT: Hon. KEVIN M. O'GRADY, Judge

After due hearing THE COURT FINDS that:

Notice of hearing was given in accordance with the order of notice previously given.

All succession taxes due to the State of Connecticut have been paid.

The distributees of the rest, residue and remainder of said estate are as set forth in the schedule of proposed distribution in said account.

WHEREFORE, it is ORDERED AND DECREED that:

Said account is allowed and approved.

Any unpaid bequests or legacies shall be paid over to those legally entitled thereto.

The rest, residue and remainder of said estate be distributed, transferred and paid over to and among the distributees or their fiduciaries by the fiduciary of the estate as set forth in the schedule of proposed distribution of said account, and in accordance with the provisions of the Will, and Codicil(s) if any, of said deceased.

It is further ORDERED AND DECREED that said fiduciary make due return of compliance with this Order.

*

Dated at Westport, CT, this 27th day of December, 1999.

*And it is further DECREED that the estate is completed and closed this 31st day of December, 1999.

KEVIN M. O'GRADY, Judge

**ARTICLES OF ORGANIZATION FOR A CONNECTICUT LIMITED LIABILITY COMPANY**

NOTE: This form constitutes only the minimum statutory requirements for filing with the Office of the Secretary of the State. Should you wish to include additional information, you may attach a plain sheet of 81/2x11 paper to the document.

1. The name of the limited liability company:

   The Bernard Edwards Company, LLC

2. The nature of business to be transacted or the purpose to be promoted or carried out the limited liability company is as follows:

   **The Company's purpose is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.**

3. Principal office address: (P.O. Box is not acceptable) 5750 Wilshire Blvd., Suite 590, Los Angeles, CA 90036

4. Statutory agent for service of process, P.A. 93-267 §5:
   Name: Richard J. Pober, Business Address: 19 Ludlow Road, Westport, CT 06880

   Residence Address: 7 Aspetuck Hill Lane, Weston, Connecticut 06883

5. The latest date upon which the limited liability company will dissolve:

   May 1, 2055

**EXECUTION**

6. Dated this 31st day of December, 1999

7. Wallace D. Franson, Manager
   Name and capacity of signatory (print or type)

8. [signature]
   Signature

9. Acceptance of appointed statutory agent.

   Richard J. Pober
   Print Name

10. [signature]
    Signature

Rec: CC:

Richard J. Pober, Esquire
19 Ludlow Road
Westport, CT 06880

Please provide filer's name and complete address for mailing receipt

**RETURN FORM TO:**
Secretary of the State
30 Trinity Street
Hartford, CT 06106

APS LLC CT-18

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

ASSIGNEE: **WALLACE D. FRANSON**
**as TRUSTEE OF THE MICHAEL EDWARDS TRUST**

PORTION ASSIGNED: AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

ASSIGNEE: **WALLACE D. FRANSON**
**as TRUSTEE OF THE DAVID EDWARDS TRUST**

PORTION ASSIGNED: AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law), reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

**ASSIGNOR:** **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

**ASSIGNEE:** **WALLACE D. FRANSON**
**as TRUSTEE OF THE MARK EDWARDS TRUST**

**PORTION ASSIGNED:** AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

**ASSIGNOR:** **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

**ASSIGNEE:** **WALLACE D. FRANSON**
**as TRUSTEE OF THE PORTIA EDWARDS TRUST**

**PORTION ASSIGNED:** AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law), reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

**ASSIGNOR:** **WALLACE D. FRANSON,** EXECUTOR OF THE ESTATE OF BERNARD EDWARDS, DECEASED

**ASSIGNEE:** **WALLACE D. FRANSON as TRUSTEE OF THE LEAH EDWARDS TRUST**

**PORTION ASSIGNED:** AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.333%) OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.667%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law) , reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories ) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(In his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
EXECUTOR OF THE ESTATE OF
BERNARD EDWARDS, DECEASED

ASSIGNEE: **WALLACE D. FRANSON**
**as TRUSTEE OF THE BERNARD EDWARDS, JR. TRUST**

PORTION
ASSIGNED: AN UNDIVIDED EIGHT AND ONE-THIRD PERCENT (8.33%)
OF THE COPYRIGHT OWNERSHIP

AN UNDIVIDED SIXTEEN AND TWO-THIRDS PERCENT (16.67%)
OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law), reserving, however, the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor, Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 1, ~~1999~~ 2000

[signature]

**WALLACE D. FRANSON**
**(in his dual capacities)**

# ASSIGNMENT OF COPYRIGHT

ASSIGNOR: **WALLACE D. FRANSON,**
AS TRUSTEE OF THE
BERNARD EDWARDS, JR. TRUST
LEAH EDWARDS TRUST
PORTIA EDWARDS TRUST
MARK EDWARDS TRUST
DAVID EDWARDS TRUST
MICHAEL EDWARDS TRUST

ASSIGNEE: **THE BERNARD EDWARDS COMPANY, LLC**

PORTION ASSIGNED: AN UNDIVIDED FIFTY PERCENT (50%) OF THE COPYRIGHT OWNERSHIP

ONE HUNDRED PERCENT (100%) OF THE ADMINISTRATION RIGHTS

The Assignor hereby sells, assigns, transfers and sets over unto the Assignee the above-indicated portion of Assignor's right, title and interest in and to the musical compositions (or fractional shares thereof) listed on the annexed Schedule (the "Compositions"), including, but not limited to the worldwide copyrights in and to said compositions, their titles, and lyrics (including any renewals and/or extensions now or hereafter provided by law), AS WELL AS the exclusive right to administer, control, use, exploit receive income from, and otherwise deal in and for said Compositions (or, in the Assignor's sole discretion, to authorize third parties to do so, in the Assignor's name and on Assignor's behalf, in whole or in part and throughout the world or in lesser territories) throughout the world in perpetuity in accordance with the terms and conditions of the Co-Publishing Agreement dated August 21, 1997 among the Assignor (acting in his capacity as Executor of the Estate of Bernard Edwards, Deceased), Bambi Edwards, and Alexis Edwards and subject to a lien to secure the payment to Jess S. Morgan & Company, Inc. of 5% of the gross receipts from exploitation of such assigned rights in perpetuity.

The Assignor makes no warranties and/or representations with respect to the Assignor's ownership of the Compositions, it being understood and agreed that the aforesaid percentage

Assignment of Copyright
Wallace D. Franson -to-
The Bernard Edwards Company, LLC
Page Two

applies only to such rights as the Assignor has acquired as Executor of the Estate of Bernard Edwards, Deceased.

Los Angeles, California
January 2, ~~1999~~ 2000

**WALLACE D. FRANSON**
**Trustee**

AGREED AND ACCEPTED:

**THE BERNARD EDWARDS COMPANY, LLC**

By: ____________________

# PAPA WAS A ROLLIN' STONE
# A/K/A PAPA WAS A ROLLING STONE

Page 3

FORM E

| CLASS | REGISTRATION NO |
|---|---|
| E | E P 299072 |
| | DO NOT WRITE HERE |

# Certificate

## Registration of a Claim to Copyright

**in a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United State of America**

**This Is To Certify** that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

George D Cary
*Register of Copyrights*
*United States of America*

NOT VALID WITHOUT COPYRIGHT OFFICE IMPRESSION SEAL

RECEIVED MAY 30 1972

**1. Copyright Claimant(s) and Address(es):**

Name STONE DIAMOND MUSIC CORPORATION

Address 2457 Woodward Avenue Detroit, Michigan 48201

Name

Address

**2. Title:** PAPA WAS A ROLLIN' STONE
(Title of the musical composition)

**3. Authors:**

Name Norman Whitfield (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. X (Check if U.S. citizen) Other (Name of country)

Domiciled in U.S.A. Yes X No Address 2457 Woodward Avenue Author of words & music (State which: words, music, arrangement, etc.)

Name Barrett Strong (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. X (Check if U.S. citizen) Other (Name of country)

Domiciled in U.S.A. Yes X No Address 2457 Woodward Avenue Author of words & music (State which: words, music, arrangement, etc.)

Name (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. (Check if U.S. citizen) Other (Name of country)

Domiciled in U.S.A. Yes No Address Author of (State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

April 1, 1972
(Month) (Day) (Year)

**(b) Place of Publication:**

USA
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes No Date of registration Registration number

Was work previously published? Yes No Date of publication Registration number

Is there any substantial NEW MATTER in this version? Yes No If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version.

*Complete all applicable spaces on next page*

EXAMINER

6. Deposit account:

7. Send correspondence to: Jobete Music Co.,Inc

Name Jobete Music Co.,Inc Address 2457 Woodward Avenue

8. Send certificate to:

(Type or print name and address)
Name Stone Diamond Music Corp. c/oJobete Music Co.,INc
Address 2457 Woodward Avenue
(City) Detroit (State) Michigan (ZIP code) 48201

## Information concerning copyright in musical compositions

***When to Use Form E.*** Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

***What Is a "Musical Composition"?*** The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

***—Song Lyrics Alone.*** The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

***—Sound Recordings.*** Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

***Duration of Copyright.*** Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

## Unpublished musical compositions

***How to Register a Claim.*** To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned so do not send your only copy.

***Procedure to Follow if Work Is Later Published.*** If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

## Published musical compositions

***What Is "Publication"?*** Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

***How to Secure Copyright in a Published Musical Composition:***

1. ***Produce copies with copyright notice,*** by printing or other means of reproduction.
2. ***Publish the work.***
3. ***Register the copyright claim,*** following the instructions on page 1 of this form.

***The Copyright Notice.*** In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements.

1. *The word "Copyright," the abbreviation "Copr.," or the symbol ©.* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1970.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br>MAY 12 1972 | Ep 299672 |
| One copy received | |
| Two copies received<br>MAY 12 1972 | |
| Fee received | |

2

*As Recorded by THE TEMPTATIONS on Gordy Records*

# PAPA WAS A ROLLING STONE

Words and Music by
NORMAN WHITFIELD
and BARRETT STRONG
Easy Beat
Am
It was the third of Sep-
mp
Repeat till ready
tem-ber
That day I'll al-ways re-mem-ber, yes I will. 'Cause
that was the day that my dad-dy died. I
nev-er got a chance to see him. Nev-er heard no thin' but bad things a-bout him. Ma-

© Copyright 1972 by STONE DIAMOND MUSIC CORP., Hollywood, Calif.
*International Copyright Secured Made in U.S.A. All Rights Reserved*

- ma I'm de - pen-din' on you, tell me the truth. (Spoken) Ma-ma looked up and said, son,
Chorus
Am
(Sung) Pa - pa Was A Roll - ing Stone, son. Wher - ev - er he laid his hat
was his home and when he died all he left us was a -
lone.
1
2
To Verses 2 and 3
(Spoken) Ma - ma.



Verse 2
Am
(Sung) Is it true what they say, that pa - pa nev - er worked a day in
his life?
And ma - ma, there's some bad talk go - in' round that pa - pa
had three out - side child - ren and a - no - ther wife,
and that ain't right, hey.
Heard some talk a - bout pa pa do - in' some store front preach - in'



talk - in' a-bout sav-in' souls and all the time leach-in'.
Deal - in' in dirt and steal -
To Chorus
- in' in the name of the Lord.
(Spoken) Ma - ma looked up and said, son,
Verse 3
Am
(Sung) I heard pa - pa call him-self a jack - of - all - trades.
Tell me is that what sent pa - pa to an ear - ly grave?





Papa Was A Rolling Stone

Sales and Shipping: WEST COAST PUBLICATIONS, INC. 4423 West Jefferson Boulevard Los Angeles, California 90016 price $1.00

331166

AGREEMENT made on November 16, 2005 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and Stone Diamond Music Corporation, a Michigan corporation ("Publisher"), whose address is c/o EMI Music Publishing, 810 Seventh Avenue, 36th Floor, New York, NY 10019-5818

**WITNESSETH:**

1. The term of this agreement shall be the period from April 1, 2005 to December 31, 2008, and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2. As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3. Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4. Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

THIS PAGE INTENTIONALLY LEFT BLANK

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6. In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

B. ~~The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect, and notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination until such licenses expire.~~

10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which ~~may~~ you may choose to continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

13. Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15. Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17. BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (1) and A (2) of this paragraph 17.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (1) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18. In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19. Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20. All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21. Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22. Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's postal or electronic ("e-mail") address, or facsimile number. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last postal or electronic address or facsimile number so furnished by Publisher.

23. This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24. Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25. Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26. This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27. In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28. Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement. All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

**BROADCAST MUSIC, INC**

By ........................................................................
Senior Vice President

**"PUBLISHER"**

By ........................................................................ CHAIRMAN
(Authorized Signatory) (Print Name and Title of Signer)

**If your company structure is a PARTNERSHIP, all other partners must sign below:**

By ........................................................................
Partner Printed Name

By ........................................................................
Partner Printed Name

By ........................................................................
Partner Printed Name

By ........................................................................
Partner Printed Name

By ........................................................................
Partner Printed Name

THIS PAGE INTENTIONALLY LEFT BLANK

# I’LL BE AROUND

Page 3

# Certificate 0 0 2 5 0

FORM E

REGISTRATION NO. EP 318074 DO NOT WRITE HERE

CLASS E

## Registration of a Claim to Copyright

in a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America

This Is To Certify that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

Abe A. Goldman

ACTING Register of Copyrights United States of America

**1. Copyright Claimant(s) and Address(es):**

Name: ASSORTED MUSIC

Address: 250 S. Broad Street Philadelphia, Penna.

Name: BELLBOY MUSIC

Address: 250 S. Broad Street Philadelphia, Penna.

**2. Title:** I'LL BE AROUND (Title of the musical composition)

**3. Authors:**

Name: Thomas Bell (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. X Other ____ (Check if U.S. citizen) (Name of country)

Domiciled in U.S.A. Yes X No ____ Address 4905 Parkside Ave. Philadelphia, Penna. Author of WORDS & MUSIC (State which: words, music, arrangement, etc.)

Name: Phil Hurtt (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. X Other ____ (Check if U.S. citizen) (Name of country)

Domiciled in U.S.A. Yes X No ____ Address 7 Oxford House Moorestown Woods Moorestown, N. J. Author of WORDS & MUSIC (State which: words, music, arrangement, etc.)

Name ____ (Legal name followed by pseudonym if latter appears on the copies) Citizenship: U.S.A. ____ Other ____ (Check if U.S. citizen) (Name of country)

Domiciled in U.S.A. Yes ____ No ____ Address ____ Author of ____ (State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

August (Month) 22 (Day) 1972 (Year)

**(b) Place of Publication:**

UNITED STATES AND CANADA SIMULTANEOUSLY (Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes ____ No ____ Date of registration ____ Registration number ____

Was work previously published? Yes ____ No ____ Date of publication ____ Registration number ____

Is there any substantial NEW MATTER in this version? Yes ____ No ____. If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version.

EXAMINER

*Complete all applicable spaces on next page*

EP310074

6. Deposit account:

7. Send correspondence to:

Name SAME AS BELOW Address

8. Send certificate to:

(Type or print name and address)

Name: ASSORTED MUSIC

Address: 250 S. Broad Street - Suite 611 (Number and street)

Philadelphia, (City) Pennsylvania (State) 19102 (ZIP code)

## Information concerning copyright in musical compositions

Earl Shelton, Pres.

*When to Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

*—Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

*—Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

## Unpublished musical compositions

*How to Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned so do not send your only copy.

*Procedure to Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

## Published musical compositions

*What Is "Publication"?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How to Secure Copyright in a Published Musical Composition:*

1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. *The word "Copyright," the abbreviation "Copr.," or the symbol* ©. Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. *The name of the copyright owner (or owners).* Example: © John Doe 1972.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

FOR COPYRIGHT OFFICE USE ONLY

| | |
|---|---|
| Application received<br>MAR 26 1973 | |
| One copy received | |
| Two copies received<br>MAR 26 1973 | |
| Fee received<br>190162 MAR 26 73 | |

© 1972 Assorted Music and Bellboy Music

EMA7 D#m/F# EMA7

ME I'LL BE THERE WHEN EVER YOU WANT

EMA7 D#m/F# EMA7

ME I'LL BE THERE WHEN EVER YOU NEED

D#m/F# EMA7

ME I'LL BE THERE I'LL BE A ROUND



#361763

AGREEMENT made on February 25, 2004, between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and Warner-Tamerlane Publishing Corp., a California corporation ("Publisher"), whose address is c/o Warner Chappell Music, Inc., 10585 Santa Monica Boulevard, Los Angeles, CA 90025.

**WITNESSETH:**

1. The term of this agreement shall be the period from April 1, 2004 to March 31, 2007, and continuing thereafter for additional periods of three (3) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2. As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3. Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4. Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

*THIS PAGE INTENTIONALLY LEFT BLANK*

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B.  Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C.  Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A.  As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1)  For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2)  For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3)  In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B.  Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6.  In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

B. The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B.  In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C.  In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A.  With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B.  Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C.  The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D.  Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E.  Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

13. Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B. Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15. Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17. BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (l) and A (2) of this paragraph 17.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (l) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18. In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19. Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20. All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21. Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22. Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's postal or electronic ("e-mail") address, or facsimile number. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last postal or electronic address or facsimile number so furnished by Publisher.

23. This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24. Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25. Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26. This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27. In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28. Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement. All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

**BROADCAST MUSIC, INC**

By ..............................................................................................
Vice President

**"PUBLISHER"**

By ..................................................................Leslie Bider, President..........................
(Authorized Signatory) (Print Name and Title of Signer)

**If your company structure is a PARTNERSHIP, all other partners must sign below:**

By ..............................................................................................
Partner Printed Name

By ..............................................................................................
Partner Printed Name

By ..............................................................................................
Partner Printed Name

By ..............................................................................................
Partner Printed Name

By ..............................................................................................
Partner Printed Name



*THIS PAGE INTENTIONALLY LEFT BLANK*

Dated: June 25, 1990

To Whom It May Concern:

Dear Sirs:

This letter will serve as formal notice that, effective April 1, 1990, WARNER-TAMERLANE PUBLISHING CORP. (BMI) and WB MUSIC CORP. (ASCAP) have purchased certain of the music publishing interests of Kenneth Gamble, Leon Huff and Thomas Bell which were formerly held in the name(s) of MIGHTY THREE SONGWRITERS (BMI), MIGHTY THREE MUSIC (BMI), ROSE TREE MUSIC (ASCAP), ASSORTED MUSIC (BMI), WORLD WAR THREE MUSIC (BMI), BELLBOY MUSIC (BMI), BELLHOUSE MUSIC (ASCAP), DOWNSTAIRS MUSIC (BMI), PIANO MUSIC (BMI), and RAZOR SHARP MUSIC (BMI) relating to the musical compositions set out on the annexed Schedule 1 and the copyrights therein and all rights in all licensing agreements.

Effective immediately, please forward all correspondence, notices, remittances, royalties (no matter when earned) and accountings with regard to such music publishing interests to WARNER-TAMERLANE PUBLISHING CORP. or to WB MUSIC CORP., as applicable, c/o WARNER/CHAPPELL MUSIC, INC., 9000 Sunset Boulevard, Penthouse, Los Angeles, California 90069-1819.

Thank you in advance for your cooperation.

Very truly yours,

KENNETH GAMBLE

LEON HUFF

THOMAS BELL

June 14, 1990

ASSORTED MUSIC CATALOGUE LISTING

| SONGTITLE | COPYRIGHT DATE | WRTR % | WRITER | PUBL. % | PUBLISHER | ARTIST | LABEL | RELEASE NO. | REL. DATE |
|---|---|---|---|---|---|---|---|---|---|
| I LIKE TO SEE US GET DOWN | | 25.00 | Gene McFadden | 50.00 | Assorted Music | | | | |
| | | 25.00 | John Whitehead | 50.00 | WE Publishing | | | | |
| | | 25.00 | Eddie Levert | | | | | | |
| | | 25.00 | Walter Williams | | | | | | |

Please claim 50% for all types of royalties on behalf of Assorted Music
Gene McFadden and John Whitehead

| SONGTITLE | COPYRIGHT DATE | WRTR % | WRITER | PUBL. % | PUBLISHER | ARTIST | LABEL | RELEASE NO. | REL. DATE |
|---|---|---|---|---|---|---|---|---|---|
| I'LL BE AROUND | Ep 310074 | 50.00 | Thomas Bell | 50.00 | Assorted Music | | | | |
| | 3/26/73 | 50.00 | Phil Hurtt | 50.00 | Bellboy Music | | | | |
| I'LL BE STANDING BY (RIGHT BY) | Ep 291156 | 100.00 | Dione Gamble | 100.00 | Assorted Music | | | | |
| | 9/17/71 | | | | | | | | |
| I'LL BE THERE TO SING FOR YOU | Pau 332723 | 50.00 | Herb Smith | 50.00 | Assorted Music | | | | |
| | 7/28/81 | 50.00 | Joel Smith | 50.00 | Rose Tree Music | | | | |
| I'LL BE WITH YOU | Pau 449484 | 50.00 | Grover Washington | 50.00 | Assorted Music | | | | |
| | 10/29/82 | 25.00 | Cynthia Biggs | 50.00 | G.W. Jr., Music | | | | |
| | | 25.00 | Dexter Wansel | | | | | | |