UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BROADCAST MUSIC, INC.; CONDUCIVE
MUSIC; SPIRIT ONE MUSIC, a division of
SPIRIT MUSIC GROUP INC.; EMBASSY
MUSIC CORPORATION; SONY/ATV SONGS
LLC; THE BERNARD EDWARDS COMPANY
LLC; STONE DIAMOND MUSIC CORP.; and
WARNER-TAMERLANE PUBLISHING CORP.,

Plaintiffs,

**MEMORANDUM AND ORDER**

2:19-cv-2637 (DRH) (AKT)

 - against -

3 LANZA LLC d/b/a RISTEGIO'S; RICHARD
LANZA; JOSEPH LANZA; and STEVEN
LANZA,

Defendants.
----------------------------------------------------------------X

**APPEARANCES**

**For Plaintiffs**

**GIBBONS PC**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
By:    Mark S. Sidoti, Esq.
       J. Brugh Lower, Esq.


**For Defendants**

Erik A. Sackstein, Esq.
P.O. Box 436
16 Princess Tree Court
Port Jefferson, NY 11777

**HURLEY, Senior District Judge:**

INTRODUCTION

The captioned Plaintiffs commenced this action against 3 Lanza LLC d/b/a

Ristegio's, Richard Lanza, Joseph Lanza, and Steven Lanza ("Defendants") pursuant

to the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), to recover damages and to obtain an injunction as a result of Defendants' copyright infringement.   Presently before the Court is Plaintiffs' motion for summary judgment.   For the reasons set forth below, the motion is GRANTED.

## BACKGROUND[1]

Plaintiff Broadcast Music, Inc. ("BMI") licenses the right to publicly perform the copyrighted music of Plaintiffs Conducive Music, Spirit One Music, a division of Spirit Music Group Inc., Embassy Corporation, SONY/ATV Songs LLC, The Bernard Edwards Company LLC, Stone Diamond Music Corporation, and Warner-Tamerlane Publishing Corporation.    (Pls. Local R. 56.1 Statement ("Pls. 56.1") ¶¶ 16–19

---

[1]     Because Defendants failed to submit a brief in opposition and a Rule 56.1 statement, the Background Section facts are drawn from Plaintiffs' submissions, including their 56.1 statement and their Requests for Admission to Defendants ("RFAs"), Ex. A to Decl. of J. Brugh Lower [DE 29-11].

These facts are undisputed and admitted by virtue of Magistrate Judge Tomlinson's Order on April 14, 2020 and Defendants' failure to respond to Plaintiffs' 56.1 statement.  *See* Local Rule 56.1(c) ("Each numbered paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); Order ¶ 3 [DE 26] ("Further, defendants' counsel is not inclined to make a motion to oppose the admission of the RFAs.  After further discussion with counsel, the Court is deeming the RFAs served by the plaintiff admitted for purposes of summary judgment and the trial of this action."); *see, e.g.*, *Hughes v. Lebron*, 2016 WL 5107030, at *1 n.1 (S.D.N.Y. Sept. 19, 2016) (considering only a movant's submissions in support of summary judgment where nonmovant "did not submit a Rule 56.1 statement or any other evidence in support of his opposition to [the] motion").

Defendants' submission, comprised of two unsworn declarations from Defendant Steven Lanza and Defendants' counsel, are addressed *infra* at Discussion Section II.

[DE 29-2]).  Defendants own and operate Ristegio's, a restaurant that features performances of live and recorded music.  (*Id.* ¶¶ 1–2, 7–12).

In August 2017, BMI attempted to enter negotiations with Defendants regarding a public performance license for the music in BMI's repertoire.  (*Id.* ¶¶ 3–4; Ex. B to Decl. of Brian Mullaney ("Mullaney Decl.") [DE 29-4]).  Over the course of several months, BMI sent twenty-three written communications and made twenty-four phone calls, initially warning Defendants of their need for a license and later demanding Defendants cease and desist all public performances of BMI's content.  (Pls. 56.1 ¶¶ 3–4).  BMI never granted Defendants a license.  (*Id.* ¶¶ 5, 15, 21).

On the night of September 29, 2018, BMI sent a music researcher to investigate whether Ristegio's was putting on public performances of BMI's music.  (*Id.* ¶¶ 13–15; Mullaney Decl. ¶ 13).  The researcher prepared a written report and an audio recording, both of which enabled BMI to ascertain that five of its works were publicly performed that night.  (Pls. 56.1 ¶¶ 14–19; *see* Ex. A to Mullaney Decl. (providing the Certified Infringement Report and Performance Identification Declaration); Ex. A to Decl. of Victoria Dutschmann ("Dutschmann Decl.") [DE 29-7] (providing the Certificates of Copyright Registration and chains of ownership)).  All five works were performed without a license.  (Pls. 56.1 ¶¶ 14–15, 21).

Defendants have continued to publicly perform music in BMI's repertoire without a license.  (*Id.* ¶¶ 5, 21, 22; Supp. Decl. of J. Brugh Lower ("Supp. Lower Decl.") ¶ 2 [DE 29-20]; *see also* Pls. Reply at 6 [DE 29-19]).  BMI calculates the license

fees from August 2017 to March 2020 would have cost Defendants $15,875.00. (Pls. 56.1 ¶ 24). Nevertheless, Defendants remain without a license. (*Id.* ¶ 21).

Plaintiffs filed their Complaint on May 3, 2019. [DE 1]. Following discovery—which included Defendants failing to appear at settlement conference, failing to serve Rule 26(a) initial disclosures, and failing to fully respond to discovery requests, including the RFAs, *see* Order ¶ 3 [DE 26]—Plaintiffs moved for summary judgment on May 15, 2020. *See* Declaration of J. Brugh Lower ("Lower Decl.") ¶¶ 2–4, 6 [DE 29-10]. In opposition, Defendants submit two unsworn declarations, one from Defendant Steven Lanza and one from Defendants' counsel.

## DISCUSSION

### I.  Legal Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is

appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir.

2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.   Defendants' Submissions

Defendants have not submitted a brief in opposition to Plaintiffs' motion nor a Rule 56.1 statement contesting Plaintiffs' statement. *See* Pls. Reply at 1; *see also* [DE 29-17, 29-18]. Where "a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Stated another way, the "failure to respond [to the movant's 56.1 statement] results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000)). Before considering whether to do so, the Court will address what Defendants did submit.

Defendant's response consists solely of two unsworn declarations from Defendant Steven Lanza and Defendants' counsel Eric A. Sackstein. *See* Decl. of

Steven Lanza ("Lanza Decl.") [DE 29-18]; Decl. of Eric A. Sackstein ("Sackstein Decl.") [DE 29-17].  These declarations are of questionable value as they do not cite to the record nor provide much in the way of legal argument.  *See Indus. Quick Search, Inc. v. Miller, Rosado & Algois, LLP*, 2018 WL 264111, at 1 n.4 (S.D.N.Y. Jan. 2, 2018).

Additionally, and "[a]lthough formal affidavits are not required to raise a genuine dispute of material fact," Defendants' statements nevertheless fail to conform with 28 U.S.C. § 1746, which requires a declarant to swear the statements are made "under penalty of perjury."  *Monclova v. City of New* York, 726 Fed. App'x 83, 84 (2d Cir. 2018) (citing Fed. R. Civ. P. 56(c), cmt. to 2010 amendment).  Because the "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements," the Second Circuit has held "that 28 U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury."  *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013).  Without this language, the declarations are inadmissible evidence and not considered on summary judgment.  *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) ("[A] district court should disregard an unsworn letter in ruling on a summary judgment motion . . . ."); *Raskin v. Wyatt Co.*, 125 F.3d 55, 56 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997)

("[U]nsworn letters do not satisfy the requirements of Fed. R. Civ. P. 56(e) and therefore cannot defeat VV's motion for summary judgment."); *e.g.*, *Condoleo v. Guangzhou Jindo Container Co., Ltd.*, 427 F. Supp. 3d 316, 322 (E.D.N.Y. 2019) (holding an unsworn expert report "inadmissible hearsay . . . that is not properly considered on a motion for summary judgment").

The Court has a strong preference in favor of resolving cases on the merits and not on procedural mishaps. *E.g.*, *Hughes*, 2016 WL 5107030, at \*5 n.5 ("[T]he Court strongly prefers to resolve parties' claims on the merits, rather than to dispose of them based on procedural default."). Though not attested to by Defendants, the Court is also mindful that restaurant enterprises like Ristegio's have suffered for the better part of 2020 due to the COVID-19 virus, with more hardship perhaps to come. But Defendants' submissions, even if considered and construed in their best light, fail to proffer a basis not to grant summary judgment in Plaintiffs' favor. *See Vazquez v. Southside United Hous. Dev. Fund Corp.*, 2009 WL 2596490, at \*2 n.3 (E.D.N.Y. Aug. 21, 2009) ("Unsworn statements are inadmissible in evaluating a motion for summary judgment, but the court has nonetheless reviewed the statements and notes that the facts presented therein—assuming that [p]laintiff could present them in an admissible form—do not affect the outcome of this decision.").

The two declarations explicitly concede liability. Defendant Steven Lanza writes, "I am not against the statements that the Defendants did not have the necessary license for playing live music. We played music in a small area by the Bar." Lanza Decl. ¶ 2. Defendants' counsel writes, "I have informed the court that we

would not contest the fact that we did not have the proper license . . . ."  Sackstein Decl. ¶ 5.

The declarations can be construed to address statutory damages.  They both assert that Defendants owe $4,073.40 in back fees and call Plaintiffs' request for $45,000 in statutory damages "excessive" in comparison.  *See* Lanza Decl. ¶¶ 6, 7, 10; Sackstein Decl. ¶¶ 6, 10.  Both claim Defendants "were not willful" in their infringement.  Lanza Decl. ¶ 10; Sackstein Decl. ¶ 10.

Alas, "[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the [summary judgment] motion." *SEC v. Rsch. Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *see Sherman v. Kang*, 205 F.3d 1324, at *1 (2d Cir. 2000) ("[Plaintiff] was not entitled to have the [summary judgment] motion denied simply on the basis of conclusory statements she made in her affidavits . . . ."); *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("The magistrate judge had characterized [plaintiff's] recitations . . . as merely 'self-serving conclusions.'  Under well-settled law, the magistrate judge's treatment of [plaintiff's] evidence and affidavits was proper because the affiants' statements advocated conclusions of law.").  Further, Plaintiffs' evidence supports a finding that back fees amount to $15,875.00 – $10,000 more than Defendants' unsupported calculation.  Pls. 56.1 ¶ 24 ("Had Defendants entered into an agreement at the time BMI contacted them in August 2017, the BMI license fees from August 2017 to March 2020 would have been $15,875.00.").  Defendants' unsupported conclusions thus carry no weight.  Nevertheless, the Court will exercise

its discretion in awarding a just amount of statutory damages.  17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect . . . to recover . . . an award of statutory damages . . . in a sum . . . the court considers just."); *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1116–17 (2d Cir. 1986).

In sum, Defendants' submissions are deficient, both procedurally and on their merits, to prevent summary judgment in Plaintiffs' favor.  The Court now turns to whether Plaintiffs' materials carry their *prima facie* burden.  Fed. R. Civ. P. 56(e); *T.Y.*, 584 F.3d at 418 (2d Cir. 2009).

## III.   Summary Judgment in Favor of Plaintiffs

### A.   Liability

Copyright owners enjoy the exclusive right to perform, or to authorize others to perform, their copyrighted works.  17 U.S.C. § 106(4).  "A public performance made without the requisite license or authorization from the copyright owner constitutes an infringement of the work." *Broad. Music, Inc. v. Prana Hosp., Inc.* ("*Prana Hosp.*"), 158 F. Supp. 3d 184, 191 (S.D.N.Y. Jan. 21, 2016); 17 U.S.C. § 501(a).  Copyright infringement based on an unauthorized public performance consists of five elements: (1) originality and authorship, (2) compliance with the formalities of the Copyright Act; (3) plaintiff's ownership of the copyrights; (4) defendant's public performance of the compositions for profit; and (5) defendant's lack of authorization for the public performance. *Prana Hosp.*, 158 F. Supp. 3d at 191; *Broad. Music, Inc. v. JJ Squared Corp.* ("*JJ Squared*"), 2013 WL 6837186, at *4 (E.D.N.Y. Dec. 26, 2013).

The first three elements are undisputed. Pls. 56.1 ¶¶ 16–19; Ex. A to Dutschmann Decl.; *see also* Ex. A at RFA Nos. 25–32 to Lower Decl. Plaintiffs attach the five copyright registrations and the chain of ownership, which "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate" and demonstrate Plaintiffs' ownership of the copyright to the five songs. 17 U.S.C. § 401(c); *Prana Hosp.*, 158 F. Supp. 3d at 192; *JJ Squared*, 2013 WL 6837186, at *5 n.4; *see* Ex. A to Dutschmann Decl. Further, Plaintiffs' declarations state that BMI has acquired the right to publicly perform, and to issue public performance license agreements for, these compositions. Dutschmann Decl. ¶ 2; Ex. A to *id.* This showing suffices for the first three elements. *Prana Hosp.*, 158 F. Supp. 3d at 192; *JJ Squared*, 2013 WL 6837186, at *5.

The fourth and fifth elements*,* which address the Defendants conduct, are also undisputed. Pls. 56.1 ¶¶ 13–15; *see* Ex. A at RFA Nos. 21–24, 34 to Lower Decl. Defendants' admissions, Magistrate Judge Tomlinson's Order, and Plaintiffs' declarations—which include the music researcher's Certified Infringement Reports and BMI's Performance Identification Declaration, *see* Ex. A to Mullaney Decl.— demonstrate Defendant's for-profit, public performance of the compositions without authorization. *Prana Hosp.*, 158 F. Supp. 3d at 192–93 ("[I]t is undisputed that [the restaurant] is operated as a for-profit establishment. . . . Moreover, through their failure to respond to plaintiffs' requests for admission, defendants have admitted that they did not have a license for a DJ to publicly perform any BMI-licensed songs . . . ."); *JJ Squared*, 2013 WL 6837186, at *5; *Broad. Music, Inc. v. 315 West 44th St. Rest.*

*Corp.* ("*315 West 44th*"), 1995 WL 408399, at *3 (S.D.N.Y. July 11, 1995) ("It matters little, however, whether on the nights the performances took place defendants made a profit.  As long as the [restaurant] was established as a profit-making enterprise, and some nexus may be found between the performances and the general business of defendants, the 'for profit' requirement is satisfied" (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917))).

All four Defendants are liable for the infringement at Ristegio's.  "It is well-settled that '[a]ll corporations and persons who participate in, exercise control over, or benefit from' a copyright infringement are jointly and severally liable as copyright infringers.'" *JJ Squared*, 2013 WL 6837186, at *5 (quoting *315 West 44th*, 1995 WL 408399, at *4).  "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (citations omitted).

Defendants Richard Lanza, Joseph Lanza, and Steven Lanza conceded their liability by admitting their ownership of, maintenance of, right and ability to supervise, and direct financial interest in Ristegio's on the night in question.  Pls. 56.1 ¶¶ 7–12; *e.g.*, *Prana Hosp.*, 158 F. Supp. 3d at 193 (holding "officers and owners," who "operated," "maintained," and "had the right and ability to supervise" an establishment in which they "had a direct financial interest," were "jointly and

severally liable for the acts of copyright infringement"); *JJ Squared*, 2013 WL 6837186, at *5–7 (same).

Defendant 3 Lanza LLC similarly admitted operating, maintaining, and a having direct financial interest in Ristegio's on the night in question. Pls. 56.1 ¶¶ 1, 6; Ex. A at RFA Nos. 1–2 to Lower Decl.; *e.g.*, *JJ Squared*, 2013 WL 6837186, at *5 (holding a corporate "profitmaking enterprise" that "own[ed] and operate[d] the [e]stablishment, ha[d] the right and ability to control the [e]stablishment's activities, and ha[d] a direct financial interest in these activities" jointly and severally liable for copyright infringement); *Broad. Music, Inc. v. My Image Studios LLC* ("*My Image Studios*"), 2020 WL 2115329, at *4 (S.D.N.Y. May 4, 2020) ("My Image Studios LLC . . . had the right and ability to supervise the persons employed by Mist Harlem and had a direct financial interest in Mist Harlem when the six songs were played. . . . [My Image Studios is therefore] jointly and severally liable for the copyright infringements resulting from the songs performed on the premises."). Therefore, all four Defendants are jointly and severally liable for infringing Plaintiffs' copyright.

## B. Relief

Plaintiffs request (1) a permanent injunction against Defendants preventing them from publicly performing BMI's music without a license, (2) $45,000.00 in statutory damages, and (3) attorney's fees and costs. Pls. Mem. at 10–18 [DE 29-1].

### 1. Permanent Injunction

The Copyright Act gives courts the ability to issue "injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17

U.S.C. § 502(a).  To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

While "courts must not simply presume irreparable harm," the first factor, "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81.  Copyright infringement often "involves lost sales or diminished reputation [that] can be difficult if not impossible to measure." *Prana*, 158 F. Supp. 3d at 195; *see My Image Studios*, 2020 WL 2115329, at *4 ("[I]t is well-settled that the harm caused by copyright infringements is normally irreparable").  As such, the first factor weighs in favor of injunctive relief.

The second factor, inadequate remedies at law, is satisfied where defendants "pose[] a significant threat of future infringement." *Prana Hosp.*, 158 F. Supp. 3d at 195.  Both the *Prana Hospitality* and *My Image Studios* Courts found this factor supported an injunction where "defendants continue to permit the public performance of musical compositions . . . and, to date, have not entered into a license with BMI." *Prana Hosp.*, 158 F. Supp. 3d at 195; *My Image Studios*, 2020 WL 2115329, at *4 ("[R]emedies at law are inadequate because Defendants are continuing

to perform musical works from BMI's repertoire to which Plaintiffs have the exclusive right."). As in those cases, this case involves "Defendant[s] [who] continue[] to publicly perform musical compositions during this litigation without a license from BMI and have stated their intent to continue doing so in the future." Pls. 56.1 ¶¶ 21–22. The second factor therefore favors a permanent injunction.

In balancing the hardships between the parties, the third factor, the Court observes that Plaintiffs' proposed injunction requires only that Defendants follow the law. Pls. Mem. at 11–14. This imposes little hardship in comparison to that already imposed on Plaintiffs, who, without an injunction, must litigate each infringement. *Prana Hosp.*, 158 F. Supp. 3d at 196 ("Requiring plaintiffs to commence litigation for each future violation would pose a considerable hardship, whereas the Court cannot detect any hardship that an injunction obliging defendants to comply with their legal duties would impose on them."); *My Image Studios*, 2020 WL 2115329, at *4 ("[T]he balance of hardships favors Plaintiffs, who will have to pursue time- and resource-intensive litigation each time Defendants infringe their rights if no injunction is entered, and all Defendants must do is comply with their legal obligations."). Litigation is all-the-more inevitable considering Plaintiffs' unrequited efforts, prior to filing suit, to license their repertoire to Defendants. Pls. 56.1 ¶¶ 3–4, 20–22. The balance of hardships favors Plaintiffs. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("'[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product. . . . The balance of hardships, therefore,

clearly tips in plaintiffs' favor" (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620–21 (S.D.N.Y. 2011)).

The fourth factor examines the public interest in Plaintiffs' proposed injunction.  Copyright law serves the public interest by "rewarding and incentivizing creative efforts." *WPIX, Inc.*, 691 F.3d at 287; *My Image Studios*, 2020 WL 2115329, at 4.  Indeed, the public has a compelling interest in "protecting copyright owners' marketable rights to their work." *Prana Hosp.*, 158 F. Supp. 3d at 196 (internal quotation marks omitted).  This final factor thus weighs in favor of a permanent injunction.

The facts before the Court are not unique, and "the Court follows numerous decisions granting permanent injunctions against establishment owners, who, after refusing to sign a proper licensing agreement, allowed the public performance of a musical composition within the plaintiff's repertoire." *Prana Hosp.*, 158 F. Supp. 3d at 196 n.9 (citing cases).  Defendants, their agents, servants, employees, and all persons acting under their permission and authority are therefore permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by BMI.

### 2.    Statutory Damages

The Copyright Act grants district courts "wide discretion" to award between $750.00 and $30,000.00 for each infringed work. *Microsoft Corp. v. AGA Sols., Inc.*, 2010 WL 1049219, at *1 (E.D.N.Y. Mar. 22, 2010) (citing 17 U.S.C. § 504(c)(1)).  To determine where in the range the award of statutory damages will fall, a court may

consider "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010); *Fitzgerald Pub. Co.,* 807 F.3d at 1116–17; *JJ Squared,* 2013 WL 6837186, at *7.

Willful infringements can enhance the per-work maximum award to $150,000.00. *Id.* § 504(c)(2). Willfulness requires "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Comput. Serv., Inc v. Microsoft Corp.,* 413 F.3d 257, 262–63 (2d Cir. 2005). Courts often infer willful infringement "where a defendant continued the infringing behavior after receiving notice of the license requirements or directed to cease and desist." *Prana Hosp.,* 158 F. Supp. 3d at 197 (citing cases). Even if plaintiff "does not seek a willfulness enhancement, it is appropriate for the Court to consider evidence of willfulness in determining where in the range between $750.00 and $30,000.00 damages should be set." *Microsoft Corp.,* 2010 WL 1049219, at *1.

Plaintiffs request statutory damages in the amount of $9,000.00 per work, which falls in the statutory range before the willfulness enhancement. Pls. Mem. at 16. Several factors support their request. The admissible evidence as to Defendants' state of mind reflects willful infringement, both past and present. Pls. 56.1 ¶ 3 (BMI

sent twenty-three written communications, including cease-and-desist requests), ¶ 4 (BMI made twenty-four phone calls), ¶¶ 5, 21 (Defendants never obtained, and still has not obtained, a license from BMI), ¶ 24 ("Defendants continue[d] to publicly perform musical compositions during this litigation without a license.").

Defendants' conduct in this litigation further signifies an attitude of noncompliance.  *E.g.*, Lower Decl. ¶ 2–4, 6 (failing to appear at settlement conference, serve Rule 26(a) initial disclosures, and fully respond to discovery requests); *see, e.g.*, Pls. Mem. at 3–5; *see also My Image Studios*, 2020 WL 2115329, at *4 ("Underscoring their culpable state of mind, Defendants have missed several discovery deadlines and have continued to host musical performances through the course of this litigation.").

Plaintiffs' request is less than three times the amount Defendants would have paid in licensing fees.  Pls. 56.1 ¶ 24.  That is, Plaintiffs' requested award does not rule afoul of "Second Circuit case law," which reflects that courts "commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."  *Prana Hosp.*, 158 F. Supp. 3d at 199 & n.12 (citing cases).

Indeed, similar conduct has supported greater awards from district courts in and outside the Second Circuit.  *My Image Studios*, 2020 WL 2115329, at *5 (awarding $20,000.00 per work where plaintiffs sent "45 written communications" and "called [defendant] 22 times"); *Prana Hosp.*, 158 F. Supp. 3d at 197–98 (awarding $12,500.00 per work where "BMI sent 48 letters/emails[] and made 42 phone calls"); *Broad. Music, Inc. v. Tex. Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 698 (N.D. Tex.

2014) (awarding $20,000.00 per work where defendant did not respond to letters and telephone calls between 1998 and 2010); *Microsoft Corp.*, 2010 WL 1049219, at *1 (awarding $30,000.00 per infringement where "defendants continued to distribute infringing products even after receiving several cease and desist letters from [p]laintiff"); *Emi Mills Music v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 75–76 (D.P.R. 2006) (awarding $15,000.00 per work where defendants "repeatedly rejected and ignored [plaintiff's] offerings and acted as if they were not subject to the copyright laws").

Because Plaintiffs' request is reasonable, the Court awards Plaintiffs' statutory damages in the amount of $9,000.00 per work, for a total of $45,000.00.

### 3. Attorney's Fees and Costs

The Copyright Act authorizes a district court to award "reasonable attorney's fees" and "full costs" to the prevailing party. 17 U.S.C. § 505. In doing so, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, — U.S. —, 136 S. Ct. 1979, 1989, 195 L.Ed.2d 368 (2016). Considerations include the "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Alternatively, reasons not to award attorneys' fees include "the presence of complex or novel issues, a defendant's innocent state of mind, or prosecution of the

case in bad faith." *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660–61 (S.D.N.Y. 1996).

"Such awards are common in copyright infringement cases and are likewise warranted" where "Defendants obstinately disregarded Plaintiffs' rights even as Plaintiffs diligently pursued those rights long before commencing this litigation." *My Image Studios*, 2020 WL 2115329, at *5. As noted in Section III.B.2, Defendants eschewed, and continue to eschew, from complying with copyright law. For that reason, as well as the others supporting the statutory damages award, Plaintiffs will receive reasonable attorney's fees and costs.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for summary judgment is GRANTED. Defendants, their agents, servants, employees, and all persons acting under their permission and authority are permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by BMI. Plaintiffs shall recover from Defendants, jointly and severally, statutory damages in the amount of $9,000.00 for each of the five works infringed, for a total of $45,000.00. Plaintiffs shall also recover from Defendants, jointly and severally, reasonable attorney's fees and costs in this action. Plaintiffs shall further recover from Defendants, jointly and severally, interest on the full amount of this judgment, from the date of entry of final judgment, pursuant to 28 U.S.C. § 1961.

As no supporting documentation as to the amount of attorney's fees and costs has been submitted, Plaintiffs are directed to file their motion for attorney's fee, with

supporting documentation, no later than 14 days after judgment is entered. Defendants may file a response no later than 14 days after Plaintiffs files their motion.

The Clerk of Court is directed to enter judgment accordingly and to close the case. The closing of the case does not prevent the filing of the attorney's fees and costs motion.

**SO ORDERED.**

Dated: Central Islip, New York         <u>s/ Denis R. Hurley</u>
       January 4, 2021               Denis R. Hurley
                                     United States District Judge